270 So.2d 455 (1972)
DADE COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
James L. PAXSON, Jr., et al., Appellees.
James L. PAXSON, Jr., et al., Appellants,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Appellee.
Charles F. HARVEY et al., Appellants,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Appellee.
Nos. 71-1066, 71-1124, 71-1125 and 71-1126.
District Court of Appeal of Florida, Third District.
December 12, 1972.
Rehearing Denied December 20, 1972.
Stuart Simon, County Atty., and John G. Fletcher, Asst. County Atty., for Dade County.
*456 Sinclair, Louis, Sand & Siegel, Miami, for Paxson and Farquhar.
Fine, Jacobson, Block & Semet, P.A., and Theodore Klein, Miami, for the Harveys, Heistand, Fines, Colemans and Helen A. Arnold.
Rosenberg, Rosenberg, Reisman & Glass, Miami, for Robert H. Traurig, as Trustee.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
HENDRY, Judge.
This is a consolidated appeal from several portions of a final order of taking and supplemental order in an eminent domain action by Dade County, Florida, for three parcels of land within the proposed Black Point Park. In 71-1066, Dade County appeals the order of the circuit court denying them the right to take parcel 6 of the land in controversy and owned by the appellee Traurig. 71-1124 and 71-1125 are an interlocutory and full appeal by the owners of parcel 3 herein involved (owned by the appellees Paxson and Farquhar) from the order of the circuit court allowing the taking of that parcel. Case No. 71-1126 is an interlocutory appeal from that same order of taking allowing the county to acquire parcel 4 of the land at issue (owned by the appellees Harvey, et al).
Pursuant to § 127.01, Fla. Stat., F.S.A., the county filed its petition in eminent domain proceedings and declaration of taking for three parcels of land within the proposed Black Point Park area. Within said petition the county alleged, in part:
"2. The land hereinafter described is needed for recreational park facilities in Dade County, Florida, the same being a public purpose and the property hereinafter described is necessary for that use. Petitioner intends in good faith to carry out this program designated as Black Point Park on the hereinafter described property in Dade County, Florida."
Parcel number 3, as described in the petition, consists of approximately 59 acres of mangrove swamp land. Parcel 4, in a similar state or condition, consists of approximately 120 acres of land. Parcel 6, somewhat removed from the main body of the park, consists of approximately 1 acre of land. The petition was accompanied by a certified resolution of the County Commission of Dade County, Florida, wherein the taking of the three parcels aforementioned was deemed necessary for the public purpose of creating Black Point Park. Upon due notice to the landowners involved, hearings were held and testimony was taken as to the necessity for the taking. All the landowners herein were duly represented at the hearings. At the conclusion of the proceedings, the circuit court entered its final order of taking as to parcels 3 and 4 but found that the acquisition of parcel 6 was not shown to be necessary and that parcel was dismissed from the proceedings. We affirm that decision as to the propriety for the taking of the parcels in question in all respects.
In order to facilitate discussion in this matter, we will consider the arguments of the appellant landowners as to parcels 3 and 4 together, as they were argued, and the argument of the county, as to parcel 6, separately.

PARCELS 3 & 4
Testimony on behalf of the county at the hearing of this cause consisted of Mr. Arthur H. Peavy, Jr., Director of Dade County Parks and Recreation, who stated the general and specific need for the proposed park and the specific uses for the parcels involved. Mr. Peavy stated, inter alia:
(R. 96-97) "I would point out that the department was involved in a survey for need for future parks and recreational facilities in the entire County area, and reflected in the findings of these surveys was the necessity for additional water-oriented, large day-use areas.

*457 "The need for the Black Point area, I think, began to be evidenced as early as in the mid-1950's, and because of it, we have been continually indicated that the Black Point area should become a large metropolitan park, and in so doing, we are trying to incorporate all the ecological advantages that we can into the development of this area, bring into being a number of facilities that are in need throughout the County, pointing out that we have shortages in these facilities with national statistics to justify our position on the need and also to bring into the same developmental plan the obvious thing that Dade County, as it continues to grow, needs. We have to plan our parks in front of where the people are."
As to the specific purposes to be met by the acquisition of parcels 3, 4 and 6, Mr. Peavy testified:
(R. 101-102) "Parcel No. 3 is one we're most desirous of maintaining, basically, in its present condition. It probably has the finest mangrove stand in the area today which is of a national significance.
"The only use that we would make of Parcel 3 is it would be part of the overflow area for our sailing, and this is referring only to the aquatic part."
* * * * * *
(R 101) "Parcel No. 4 indicates that we would have a swimming lagoon, we would have the major parking area and this would be the central parking of the entire park development. It would be the headquarters site, certainly.
"The swimming area would be constructed in much the same manner that we have at Homestead, Bayfront Park, Matheson Hammock. There would be a sailboat marina. We would run canoe trails through parts of the total park area. There would be a wading beach on the front side and south side of this area, and basically, its the heart of the park."
* * * * * *
(R. 99-100) "Parcel 6 is located northwesterly of the major boat launching area of the boat ramp and contains a portion of the parking area for the boat ramp as well as the entrance road.
"We also indicate that there will be a need for the buffer area between the launching area and the restaurant area which is found in part 7. However, we continue this buffer area down the southwesterly side of both Parcel 6 and 7."
Mr. Peavy also indicated that approximately 250,000 Dade County residents reside within an eight-mile radius of the proposed park site in the areas known as Cutler Ridge, South Miami Heights, Whispering Pines and a part of Richmond Heights. (R. 106)
The major contentions of the owners of parcels 3 and 4 can be reduced to three arguments. We paraphrase these arguments as: (1) the county failed to plead and prove that a survey was made of the line of construction for the parcels involved pursuant to the requirements of Fla. Stat. § 73.021(5), F.S.A.; (2) The county failed in showing the public necessity for the acquisition of the lands pursuant to § 127.01, Fla. Stat., F.S.A.; and (3) The county failed to show that the required approvals from state and federal agencies had been met prior to acquisition of the land.
Florida Statute, § 73.021(5), F.S.A., sets out one of the requirements of a petition for eminent domain as, "A statement that the petitioner has surveyed and located its line or area of construction, and intends in good faith to construct the project on or over the described property." We, of course, recognize that some of the requirements of the petition, as set out in § 73.021, Fla. Stat., F.S.A., have been given a *458 very strict construction by our Supreme Court. See: Tosohatchee Game Preserve v. Central & Southern Florida Flood Control District, Fla. 1972, 265 So.2d 681. However, we cannot agree that such a strict construction is demanded in the case sub judice. There are obvious examples where demanding the pleading and proof of a survey would render certain statutes nugatory if strictly construed. For example, § 127.02, Fla. Stat., F.S.A. invests in county commissions the authority to acquire personal property by eminent domain proceedings. It would be ludicrous to argue that a "survey" is necessary of the personal property prior to its condemnation, as a strict construction of that provision would require. Likewise, in proceedings under § 127.01, Fla. Stat., F.S.A., providing the authority of the counties to acquire land for public parks, playgrounds and recreational purposes, a strict construction of the requirements for the petition would render this statute ineffective for the purpose for which it was intended. The county, in the instant case, has planned a huge park complex of which the parcels herein involved are a part. To require the county to survey and locate its area or line of construction would mean that the plans for the park must be specific as to the details of the internal placement of improvements prior to acquisition of the land. Such a requirement on the counties has yet to be approved by our courts and we will not do so at this time. See: Wright v. Dade County, Fla.App. 1968, 216 So.2d 494, cert. denied, Fla., 225 So.2d 527; 396 U.S. 1008, 90 S.Ct. 565, 24 L.Ed.2d 500.
The second contention of the appellant landowners strikes at the very heart of the proceedings below in alleging that no public necessity was shown for the acquisition of parcels 3 and 4 as is required under § 127.01(2), Fla. Stat., F.S.A. in support of this position the appellant landowners place great reliance on the case of Peavy Wilson Lumber Co. v. Brevard County, 159 Fla. 311, 31 So.2d 483, 172 A.L.R. 168. However, we are not of the opinion that the facts in the case sub judice are sufficiently similar to that case to demand that we reach the same result.
In the Peavy case, the county filed its petition to condemn by eminent domain, four hundred ninety acres of privately owned land, somewhat removed from the community, in order to create a recreational hunting and fishing area. The court found that the county had failed to allege enough in its petition and proof to demonstrate to the court the necessity for the taking. In fact, the court also noted that the instigation of the entire proceeding rested upon the coercion of a small group of persons that were desirous of maintaining open hunting and fishing rights in the land for their own private benefit. Thus stated, the court reversed the order of taking. On either ground stated above, we find no similarity with the case before us. It has been established, in the instant cause, that a population of approximately 250,000 county residents are in a close proximity to the site of the proposed park and we find abundant proof within the record supporting the need for the facility. Nor can we read the Peavy decision to mean that any recreational purpose in the acquisition of land is unnecessary, per se, for that would defeat the very purpose and intent of the Legislature in enacting § 127.01(2), Fla. Stat., F.S.A., providing for such acquisitions.
It is well established that in order to satisfy the burden of showing some necessity for a taking, the condemning authority is not required to prove "absolute" necessity as the appellants urge. It is sufficient when there appears in the record proof of some "reasonable necessity" for the taking. See: Canal Authority v. Litzel, Fla. 1970, 243 So.2d 135; Canal Authority v. Miller, Fla. 1970, 243 So.2d 131. Nor is it required that the county show an immediate need for the property or project proposed. As our Supreme Court stated in *459 the case of Carlor Co. v. City of Miami, Fla. 1953, 62 So.2d 897, 902:
"During the last ten years the progress, growth and development of the Miami area has been beyond the expectations of most everyone. It is the duty of public officials to look to the future and plan for the future. In erecting public buildings and public improvements, it is likewise the duty of public officials to build and plan not only for the present but for the foreseeable future... . The hands of public officials should not be tried to the immediate necessities of the present but they should be permitted, within reasonable limitations, to contemplate and plan for the future."
See also: Staplin v. Canal Authority, Fla. App. 1968, 208 So.2d 853; State Road Department of Florida v. Southland, Inc., Fla.App. 1960, 117 So.2d 512; Wright v. Dade County, supra.
The final point of the appellant landowners was that the county had failed to meet the burden of showing a reasonable probability that the necessary governmental approvals could be obtained for the project. Seadade Industries, Inc. v. Florida Power & Light Co., Fla. 1971, 245 So.2d 209. Our review of the record convinces us that the requisite burden in this regard had been sustained by the county. The remaining arguments of appellants in this regard we find without merit.

PARCEL 6
Dade County, as appellant, contends that the circuit court erred in denying them parcel 6 as a part of the project under consideration. We are of the opinion that parcel 6 stands in a unique position factually from the other parcels in question and that the record fails to indicate the necessity for its acquisition. We adhere to the oft stated principle that an acquiring authority will not be permitted to take a greater quantity of property, or greater interest or estate therein, than is necessary to serve the particular public use for which the property is being acquired. See: Canal Authority v. Miller, Fla. 1970, 243 So.2d 131; Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527; Staplin v. Canal Authority, Fla.App. 1968, 208 So.2d 853; Miller v. Florida Inland Navigation District, Fla.App. 1961, 130 So.2d 615.
Therefore, for the reasons and upon the authorities cited and discussed, the judgment appealed from is hereby affirmed.
Affirmed.