BOYER, Acting Chief Judge.
A brief chronological recitation of this case is necessary to an understanding of the legal issues involved. Notwithstanding the several parties designated as appellees, the real parties to this appeal are the State of Florida Department of Natural Resources, hereinafter called the Department, and Frank A. Ford, as Trustee for Emma Gar-rard Ford, Ray Ford Veech, Jean Ford Pen-rod and Frank A. Ford, hereinafter called Ford.
In 1975 the Legislature of the State of Florida passed Chapter 75-251, Laws of Florida, which provides in material part as follows:
“The Board [the Governor and Cabinet as the head of the Department of Natural Resources] is empowered and authorized to acquire by the exercise of the power of eminent domain, in accordance with Chapter 73, any land or water areas, related resources and property, and any and all rights, title and interest in such land or water areas, related resources and oth *825 er property in the Volusia recharge area lying and being in Volusia County, Florida, and containing approximately 3,100 acres. This area may be more specifically described and defined by administrative action of the Department of Natural Resources.”
Pursuant to that authority the Department filed a complaint seeking to acquire by eminent domain certain lands lying within the Volusia Recharge Area, as part of a fresh water well field to meet the present and future potable water needs of the area and to preserve a large, relatively undisturbed, fresh water ecosystem of regional importance. Prior to the filing of the complaint Ford had become the owner of, in a manner neither questioned nor material here, and the record title holder of the subsurface oil, gas and mineral rights under the three parcels which the Department sought to condemn. Ford answered the complaint and demanded full compensation for his subsurface rights. After the complaint was filed the Department acquired by warranty deed the surface interests in the two parcels of land owned by Hudson Pulp and Paper Corporation and Rotaler Corporation. Both deeds specifically recited that the conveyance was subject to oil, gas and mineral reservations of record. Ford thereupon filed a motion for summary judgment alleging, inter alia, ownership, as trustee, “of oil, gas and other minerals situate, lying and being on and under the lands described in [the Department’s complaint in eminent domain], said minerals including, but not limited to, water, titanium, phosphate, metals, clay, top soil, muck, peat, humus, and sand” and that his ownership “includes the right of ingress and egress at all times on said lands for the purpose of mining, drilling, exploring, operating and developing said land for the extraction of the aforesaid minerals.” The motion concluded with the prayer that the court “enter a summary judgment of liability, in favor of said respondent and against the petitioner, for the payment of full compensation for the aforesaid interest in land held by said respondent.” The Department then filed and served a notice of voluntary dismissal, dismissing from its complaint and action in eminent domain the two parcels of property which it had acquired from Hudson and Rotaler, as above mentioned. Ford thereupon filed a motion to strike the notice of dismissal, alleging, inter alia, that the Department had “acquired title to the lands designated herein as Parcel No. 1 and Parcel No. 2, excepting the interest in and to said lands held by” Ford and that “to allow a dismissal of this proceeding, as to the interest in said lands of [Ford] is prejudicial to the rights of [Ford] to receive full compensation for the interest in said lands held by [Ford]”, concluding that he (Ford) “is entitled, under the circumstances present in the subject proceedings, for an adjudication of his rights in and to the lands heretofore acquired by the [Department] and designated herein as Parcel No. 1 and Parcel No. 2.”
Acting on said motions, the trial judge granted Ford’s motion for summary judgment and his motion to strike the Department’s notice of dismissal, reciting that “Judgment is hereby entered against [the Department] and in favor of [Ford] as to liability for the payment of full compensation for the taking of the ownership interest of said [Ford] by [the Department] in the lands described in the complaint heretofore filed herein.” The order further recited that jurisdiction was retained for the purpose of empaneling a jury to determine the issue of full compensation as to Ford’s ownership interest. It is from that order that this appeal is taken.
The complaint describes parcel one and alleges the owner to be Hudson Pulp and Paper Corporation subject to “oil, gas and mineral reservations * * * rights of ingress and egress, rents and royalties now vested in Frank A. Ford, Trustee, * * Parcel two is described by legal description, the owner alleged to be Rotaler Corporation, formerly Cousins Investment Company, subject to “oil, gas and mineral reservations * * * rights of ingress and egress and royalties now vested in Frank A. Ford, Trustee, * * * Neither the an *826 swer filed by Ford, his motion for summary judgment nor motion to strike the notice of dismissal are under oath, therefore they cannot be given the dignity of an affidavit or sworn statement. There is nothing in the record, other than the bare allegations of the answer and motion for summary judgment, to substantiate Ford’s assertions that he is entitled to oil, gas and other minerals “on” the subject lands nor the “top-soil, muck, peat, humus and sand”. It, is pertinent to note that in his motion for summary judgment Ford did not pray for a judgment of liability for compensation for any interest owned by him and taken or condemned by the Department; but, instead, prayed for compensation for the interest “held” by him. The difference is not a matter of semantics, for there is not one iota of evidence in the record that the Department has, will or intends to condemn or take any interest owned by Ford. Indeed, the record clearly reveals that at the time the summary judgment was entered, and the motion striking the voluntary notice of dismissal was granted, Ford was in the identical position that he was in prior to the passage by the legislature of Chapter 75-271, Florida Statutes and prior to the filing by the Department of this action. The summary judgment was, therefore, premature. If and when the Department takes, abridges or interferes with Ford’s property rights then, unless the Department proceeds by way of eminent domain, Ford has an appropriate remedy by inverse condemnation or, if the invasion of his rights be by tort, such other remedy as the lay may afford. However, until such time as such an event occurs, Ford being in the identical position that he was in prior to the time that the suit was filed, the taxpayers of the State of Florida should not be required to pay.
It is noted that the statute vesting authority for the subject eminent domain action specifically provided that the taking should be in accordance with Chapter 73 of the Florida Statutes. That chapter generally provides the manner of exercising the power of eminent domain, while chapter 74 provides a discretionary means of taking possession and title to lands sought to be condemned by an order of taking prior to entry of final judgment establishing compensation therefor. Under chapter 74, upon payment of a sufficient deposit, title to the lands may be vested in the condemnor. In the case sub judice, however, the condemnation proceedings were pursuant to chapter 73. As a result, no title or interest whatsoever passed to the appellant by condemnation prior to the filing of its notice of dismissal.
Rule 1.420, Fla.R.Civ.P., entitled “Dismissal of Actions”, provides as follows:
“(a) Voluntary Dismissal; Effect Thereof. (1) By Parties. Except in action wherein property has been seized or is in the custody of the court, an action may be dismissed by plaintiff without order of court (i) by serving or during trial, by stating on the record, a notice of dismissal at any time before a hearing on motion for summary judgment, or if none is served or if such motion is denied, before retirement of the jury in a case tried before a jury or before submission of a nonjury case to the court for decision, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when served by a plaintiff who has once dismissed in any court an action based on or including the same claim. If a lis pendens has been filed in the action, a notice or stipulation of dismissal under this paragraph shall be recorded and cancels the lis pendens without the necessity of an order of court.” (emphasis added)
In accordance with that rule a plaintiff has the absolute right to voluntarily dismiss an action without an order of court by serving or stating on the record during trial a notice of dismissal at any time before a hearing on a motion for summary judgment, before retirement of the jury, or before submission of a non-jury case to the *827 court for decision. Kubicek v. South Broward Hospital District, 231 So.2d 838 (Fla. 4th DCA 1970); and Meyer v. Contemporary Broadcasting Co., Inc., 207 So.2d 325 (Fla. 4th DCA 1968). Moreover, the trial court has no discretion in granting or denying such a dismissal by the plaintiff.. Rich Motors, Inc. v. Loyd Cole Produce Express, Inc., 244 So.2d 526 (Fla. 4th DCA 1971).
Said rule has been construed to apply only to voluntary dismissal of entire causes of action, rather than partial dismissal of individual parties or claims based on the same cause, inasmuch as the rule is entitled “Dismissal of Actions”, not “Dismissal of Parties”. Deseret Ranches of Florida, Inc. v. Bowman, 340 So.2d 1232 (Fla. 4th DCA 1976) (dismissal of a count of the complaint), and Shannon v. McBride, 105 So.2d 16 (Fla. 2d DCA 1958) (dismissal of a party). However, neither of those cases was an action in eminent domain and they are distinguishable on that basis. In exercising the power of eminent domain, the condemnor has broad discretion in joining many like parcels to be acquired in one action or in trying them separately, depending on the nature and ownership of each parcel. Consequently, each parcel takes on the character of a separate and distinct cause of action consolidated with others, rather than different counts of the same cause. That view was recognized in Conner v. State Road Dept., 66 So.2d 257 (Fla.1953), in which the Court said, in allowing the voluntary dismissal of a portion of the lands to be condemned, that it was “committed to the doctrine that proceedings for condemnation of private property may be dismissed by the condemnors at any time.” It went on to explain that “any time” meant before compensation is made or possession of the property is taken by the condemnors. (See also 27 Am.Jur.2d Eminent Domain § 455.) To allow otherwise might result in violation or abuse of the principle that a condemning authority cannot take more lands or a greater interest therein than necessary to serve the particular public use for which it is being acquired. Canal Authority v. Miller, 243 So.2d 131 (Fla.1970); Dade County v. Paxson, 270 So.2d 455 (Fla. 3d DCA 1972), and Ball v. City of Tallahassee, 269 So.2d 750 (Fla. 1st DCA 1972), quashed on other grounds, 281 So.2d 333.
As to eminent domain cases generally, it is well-settled that proceedings may be abandoned or dismissed by the condemn- or at any time before the rights of the parties become vested. State Road Dept. v. Zetrouer, 105 Fla. 650, 142 So. 217 (1932); City of Miami Beach v. Cummings, 266 So.2d 122 (Fla. 3d DCA 1972); 27 Am.Jur.2d Eminent Domain § 453. The exercise of that right by the condemnor is not without its commensurate obligations to the landowner: Upon such an occurrence, the landowner is entitled to reasonable attorney’s fees for services rendered or incurred prior to dismissal and for costs of the litigation. Jacksonville Terminal Co. v. Blanshard, 77 Fla. 855, 82 So. 300 (1919), and 85 Fla. 500, 96 So. 286 (1923); DeSoto County v. Highsmith, 60 So.2d 915 (Fla.1952); and Ocala Manufacturing, Ice & Packing Co. v. Canal Authority, 301 So.2d 495 (Fla. 1st DCA 1974).
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT HEREWITH.
Ford has filed a motion for attorney’s fees incident to this appeal. Although he is entitled, under the authorities above cited, to reasonable compensation for his attorney incident to the proceedings in the trial court and such costs as are taxable by law, he is not entitled to attorney’s fees nor costs incident to this appeal. That motion is therefore denied.
IT IS SO ORDERED.
SMITH, J., concurs.
BOOTH, J., dissents.