507 So.2d 1172 (1987)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
FORTUNE FEDERAL SAVINGS AND LOAN ASSOCIATION, f/k/a First Federal Savings and Loan Association of Clearwater, and Ronald J. Schultz, Property Appraiser, Pinellas County, Appellees.
No. 86-955.
District Court of Appeal of Florida, Second District.
May 29, 1987.
*1173 Franz Eric Dorn and A.J. Spalla, Tallahassee, for appellant.
Charles M. Phillips, Jr., Clearwater, for appellee Fortune Federal Sav. and Loan Ass'n.
RYDER, Acting Chief Judge.
We are here concerned with the constitutionality of section 337.27(3), Florida Statutes (1985). The following facts are not in dispute.
On August 23, 1985, the Florida Department of Transportation (FDOT) filed a petition in eminent domain to acquire fee simple title to Parcel 108 owned by Fortune Federal Savings and Loan Association. Parcel 108 is 1.344 acres in size and is rectangular in shape. Fortune Federal has a one-story prefabricated building on the property which serves as a branch banking facility. A taking of either a part or the whole of Parcel 108 will destroy the business use of the property.
Fortune Federal did not object to the taking of Tract 1, consisting of .508 acres, a portion of the parent tract that has frontage on U.S. Highway 19. Tract 1 is necessary for the highway widening project. The FDOT acquired Tract 1 by an order of taking entered on October 29, 1985, by stipulation of the parties. The branch banking facility is located on Tract 1.
Fortune Federal objected to, and this suit concerns, the FDOT's proposed taking of Tract 2, consisting of .836 acres. Tract 2 is the vacant portion of the parent tract lying to the rear of Tract 1, away from the highway. Tract 2 is not included within *1174 the area of the FDOT's highway construction plans.
At the hearing on the order of taking, the FDOT presented several witnesses. The FDOT's property appraiser testified that the value of the whole parent tract was $480,000.00 and that full compensation of the taking of Tract 1 was $225,000.00. The FDOT presented a certified public accountant who testified that the taking of Tract 1 would destroy Fortune Federal's business and that Fortune Federal was going to claim in excess of $2,000,000.00 in business damages. The accountant testified that he believed that the business damages would exceed the difference between the value of the .508 acres alone and the value of the entire tract.
The FDOT's right-of-way administrator also testified that the bank's business damages would exceed the total value of the property. He testified that under section 337.271, Florida Statutes (1985), the FDOT was required to negotiate business damage claims with the landowner. He testified that a "whole take" pursuant to section 337.27(3) was justified because the "acquisition costs to the department would be equal to or less than the cost of acquiring a portion of the property."
The trial court, in denying the FDOT's proposed "whole take," ruled that business damages were not a part of the "acquisition costs" mentioned in section 337.27(3) and that for section 337.27(3) to be applicable the direct cost of the land itself for the part taken plus severance damages must exceed the value of the whole tract of land. The trial court issued the following findings of facts and conclusions of law:
[T]he FDOT did not proceed in its attempt to take the entire parent tract, including Tract 1 and Tract 2, on the basis of necessity of the entire tract for construction of the project, but relied solely upon § 337.27(3) as the basis for the taking. The pertinent portion of § 337.27(3), enacted in 1984, is:
In the acquisition of lands and property, the Department may acquire an entire lot, block or tract of land, if, by doing so, the acquisition costs to the Department be equal to or less than the cost of acquiring a portion of the property.
The FDOT did not allege in its Petition, nor offer any proof in the presentation of testimony or evidence at the hearing on the Order of Taking, that the acquisition costs to the Department of acquiring the entire tract would be equal to or less than the cost of acquiring Tract 1 alone. Rather, the FDOT presented testimony at the Order of Taking hearing only that the taking of Tract 1, instead of acquisition of the entire tract, would invoke the provisions of a separate statute, § 73.071, which would permit a separate award of special damages to the Defendant for destruction of its established business of more than five years standing.
The testimony offered by the FDOT at the Order of Taking hearing was that the mathematical addition of the market value of Tract 1 and the special damages to which the Defendant would be entitled, if only Tract 1 were taken, would exceed the market value of the entire parent tract. The entire parent tract includes Tract 2, which the FDOT admits unnecessary for construction of the project or any purpose of the FDOT.
The statute submitted to the Court's scrutiny by the pleadings of the parties, their presentations at the Order of Taking hearing, and their briefs filed with the Court is § 337.27(3), enacted in 1984. There is no record of utilization of this statute by the FDOT in the acquisition of privately owned real property in any eminent domain proceeding before the instant case, so that there is no published opinion of any Court in this State on the subject of the circumstances under which it may or may not be utilized, nor on the subject of its constitutionality.
The subject matter of the statute is the acquisition, by the force of eminent domain, of fee simple title to privately-owned real property. Accordingly, the most strict of all constitutional restraints, the same that protect life and *1175 liberty, are instantly engaged and invoked at the forefront of consideration.
Assuming, as we should, that the author of the statute did, either in fact or fantasy, envision a circumstance in which the direct costs of acquisition would be lessened by taking a larger parcel, those circumstances do not exist in the case at bar. Such direct costs might consist of draining or filling, or construction of access or protective structures, which would be necessary if only the smaller tract were taken, but which would be made unnecessary by acquisition of the entire parent tract.
The word "acquisition" is a very precise word, with only one meaning. When applied to "lands and property, entire lot, block, or tract of land", it is totally restricted to one concept, to wit; taking title to real estate.
Taking title to land does not include payment of damages under § 73.071(b), which are themselves described as "special" damages. The use of the word "special" in any connection, including this statutory one, specifically isolates those damages from all other considerations. Even in the private sector, the purchase of land includes title to the building attached thereto, but ownership of the business conducted in the building can only be obtained by a separate transaction of an entirely different nature. Accordingly, the contention of FDOT counsel that "acquisition costs of lands and property" in § 73.071(3)(b), is unwarranted, is unsupported in law, and is not suggested by the text of either statute. To conclude otherwise would be to allow one statute (§ 337.27(3)) to repeal or amend another statute (§ 73.071(3)(b)) by implication, contrary to law, since nowhere in the text of the "property acquisition" statute is the "special damage" statute mentioned.
In addition, had the text of the "property acquisition" statute contained text altering the separate effect of the "special damages" statute, or if, absent text, it is given that meaning, the "property acquisition" statute is invalid, in that its title is defective, because it contains no reference whatsoever to that subject.
This Court aligns itself with the decisions of the Supreme Court in Jamesson v. Downtown Development Authority of the City of Fort Lauderdale, 322 So.2d 510 (Sup.Ct. 1975), and Behm v. Division of Administration, State of Florida Department of Transportation, and Reno Orlando, et al., 383 So.2d 216 (Sup.Ct. 1980), rehearing denied May 15, 1980, in determining that business damages are intangibles and do not constitute "property", within the meaning of the statutes governing the acquisition of real property by eminent domain proceedings.
The result desired by the FDOT can only be achieved by a finding that special damages (for loss of business) must be added to the acquisition cost of the real estate of Tract 1, so as to inflate the damages of every nature attributable to Tract 1 above the market value of land alone in the entire parent tract. That stratagem is unsound to provide the sole basis for the attempted taking.
Accordingly, the Court concludes that the Order of Taking heretofore entered on October 29, 1985, should be ratified and confirmed, limiting the taking in this cause to the land embraced in Tract 1, without ruling upon or considering potential business damages at the Order of Taking stage of the proceedings, where the subject matter is limited to the estimate of value of the land taken.
Having reached the foregoing conclusions and determined the matter accordingly, pursuant to the familiar mandate expressed in McKibben v. Malloy [Mallory], 293 So.2d 48 (Sup.Ct. 1984), to decide matters before the Court upon bases other than constitutional ones, whenever that is possible, the constitutional questions raised by the Defendant in its Answer, and at the order of taking hearing, and in its brief filed with the Court, are rendered moot.
It is, nevertheless, interesting to note that the Supreme Court of Florida was not reluctant to find § 83.66, Florida Statutes, unconstitutionally invalid in the case of Storer Cable TV of Florida, Inc. *1176 v. Summerwinds Apartments Associates, Ltd., et al., in its opinion filed on March 13, 1986, Case No. 65,620 and Case No. 65,993, reported in 11 F.L.W. 100 [493 So.2d 417 (Fla. 1986)]. Section 83.66, Florida Statutes, provided that no compensation be paid to the landlords for cable television access to tenants. The Supreme Court found that the statute constituted unconstitutional taking of property without compensation, and denial of due process.
It would appear that the positions of the defendant in the case at bar on the subject of constitutionality of § 337.27(3) may well have merit, particularly in that the FDOT admitted that there is no necessity for the taking of Tract 2, and no use of the land embraced therein is proposed by the FDOT, and further, that the language of the statutory section makes it generically unconstitutional in that "acquisition cost will be less" (from the statutory text), is in direct conflict with the "full compensation" requirement of the Florida Constitution.
In Baycol, Inc. v. Downtown Development Authority, 315 So.2d 451 (Sup.Ct. 1975), the clear difference between public benefit (lessened acquisition cost) and public purpose is pointed out. It may well be a public benefit to lessen the cost of acquiring property for public improvement, but depriving the land owner of full compensation for the land taken is not a proper public purpose.

While the trial judge made a laudable attempt to hold section 337.27(3) constitutional by construing "acquisition costs" as excluding business damages, the trial judge misconstrued the statute. As evidenced by the language of section 337.27(3) and by the staff analysis and economic impact statement, the legislature clearly intended to limit the state's costs in partial taking situations. Section 337.27(3) allows the FDOT to take an entire parcel of land where the cost of a partial take would exceed the cost of a whole take.
Article X, section 6(a), Florida Constitution (1985), provides that: "No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner." Full compensation consists of two elements, the value of the property taken and severance damages to any remainder. Division of Administration, State Dept. of Transportation v. Grant Motor Co., 345 So.2d 843, 845 (Fla. 2d DCA 1977). When the state takes an entire parcel, the owner is entitled to the value of the tangible property taken. Id. at 846. When the state takes a portion of a parcel, the owner is entitled to the value of the tangible property taken as well as to severance damages. Severance damages are generally measured by the reduction in value of the remaining property. Mulkey v. Division of Administration, State Dept. of Transportation, 448 So.2d 1062, 1065 (Fla. 2d DCA 1984).
Business damages do not constitute a part of the constitutionally protected concept of "just" or "full" compensation. City of Miami v. Coconut Grove Marine Properties, Inc., 358 So.2d 1151, 1154 (Fla. 3d DCA 1978). As was stated in State Road Dept. v. Bramlett, 189 So.2d 481 (1966):
[As] a general rule that injury to business or loss of profits, or the inconvenience of carrying on business in a new location is not to be considered as an element of damages in eminent domain proceedings in the absence of a statute expressly allowing such damages, even under a constitutional provision allowing just compensation for property taken, injured or destroyed.
Business damages are a matter of legislative grace. Jamesson v. Downtown Development Authority, 322 So.2d 510 (Fla. 1975).
The Florida legislature has chosen to award business damages only where a partial taking occurs, not where a full taking occurs. Section 73.071(3)(b), Florida Statutes (1985) provides for business damages:

*1177 (b) Where less than the entire property is sought to be appropriated, any damages to the remainder caused by the taking, including, when the action is by the Department of Transportation, county, municipality, board, district or other public body for the condemnation of a right-of-way, and the effect of the taking of the property involved may damage or destroy an established business of more than 5 years standing, owned by the party whose lands are being so taken, located upon adjoining lands owned or held by such party, the probable damages to such business which the denial of the use of the property so taken may reasonably cause; any person claiming the right to recover such special damages shall set forth in his written defenses the nature and extent of such damages.
Section 337.27(3) attempts to limit the state's expenses in exercising its eminent domain power by allowing the state to take an entire parcel of land where the acquisition costs of a partial take would exceed the cost of a whole take. The trial judge narrowly construed the term "acquisition costs" in an effort to avoid the issue of the statute's constitutionality. The trial judge construed "acquisition costs" as the direct costs of the land itself and stated that "such direct costs might consist of draining or filling, or construction of access or protective structures, which would be necessary if only the smaller tract were taken, but which would be made unnecessary by acquisition of the entire parent tract." Reading section 337.27(3) in pari materia with section 337.271, Florida Statutes (1985), leads one to the inescapable conclusion that the legislature intended to include business damages within the definition of "acquisition costs." The title of Chapter 337 is: "Contracting; Acquisition, Disposal, and Use of Property." Section 337.27(3) is entitled: "Exercise of power of eminent domain by department; procedure; title; cost." Section 337.27(3) discusses the "acquisition of lands and property" and the limiting of "acquisition costs." Section 337.271, entitled "Negotiations for Acquisitions," outlines the procedure for claiming business damages. Because the legislature includes business damages under negotiations for acquisition, we conclude that business damages constitute part of "acquisition costs." Thus, section 337.27(3) would seem to allow a "whole" take where acquisition costs, including business damages, of a partial take would exceed a "whole" take.
The legislature, however, may not allow the state to take private property without a valid public purpose. Not long ago, the Florida Supreme Court reminded us of one of our most precious rights when it wrote the following regarding the exercise of the eminent domain power:
[Eminent Domain Power is] the means provided by the constitution for an assertion of the public interest and is predicated upon the proposition that the private property sought is for a necessary public use. It is this public nature of the need and necessity involved that constitutes the justification for the taking of private property, and without which proper purpose the private property of our citizens cannot be confiscated, for the private ownership and possession of property was one of the great rights preserved in our constitution and for which our forefathers fought and died; it must be jealously preserved within the reasonable limits prescribed by law.
Baycol, Inc. v. Downtown Development Authority, 315 So.2d 451, 455 (Fla. 1975). While two jurisdictions, California and New Jersey, have liberally construed public purpose to include protection of the state's fiscal well-being, thus allowing excess condemnation, Florida has never so liberally construed public purpose. Although the public may benefit from limiting state expenditures, such benefit does not rise to the level of public purpose. The Florida courts have consistently held that "a condemning authority cannot take more lands or a greater interest therein than necessary to serve the particular public use for which it is being acquired." State Dept. of Natural *1178 Resources v. Hudson Pulp & Paper Corp., 363 So.2d 822 (Fla. 1st DCA 1978); Canal Authority v. Miller, 243 So.2d 131 (Fla. 1970); Dade County v. Paxson, 270 So.2d 455 (Fla. 3d DCA 1972).
Section 337.27(3) appears to be the legislature's attempt to limit acquisition costs in eminent domain cases by allowing a "whole" take when it is cheaper than a partial take with business damages. However, under the Florida Constitution and case law, the legislature cannot authorize the taking of an individual's land where the land is taken merely to minimize acquisition costs and is not necessary to effectuate a public purpose. The legislature could properly limit acquisition costs by limiting business damages, because, as was afore-mentioned, business damages are a matter of legislative grace. Alternatively, the legislature could repeal the statutes providing for business damages in eminent domain cases or could place a ceiling on the amount of business damages that may be awarded.
In the instant case, the FDOT is taking more property than is necessary to expand U.S. Highway 19. The FDOT only requires Tract 1 and that is the only property that the FDOT may take constitutionally.
Accordingly, we affirm the trial court's holding granting a partial taking and denying the FDOT's request for a "whole take" of appellee's property. We also hold unconstitutional section 337.27(3), Florida Statutes (1985). Because of the nature of our holding and the obvious fact that this question will be raised again, we certify the following question to the Florida Supreme Court as one of great public importance:
WHETHER SECTION 337.27(3), FLORIDA STATUTES (1985), WHICH LIMITS ACQUISITION COSTS IN EMINENT DOMAIN CASES BY ALLOWING THE STATE TO CONDEMN MORE PROPERTY THAN IS NECESSARY TO IMPLEMENT A VALID PUBLIC PURPOSE, CONTRAVENES THE FLORIDA CONSTITUTION?
Affirmed.
CAMPBELL and LEHAN, JJ., concur.