532 So.2d 1267 (1988)
DEPARTMENT OF TRANSPORTATION, Appellant-Petitioner,
v.
FORTUNE FEDERAL SAVINGS AND LOAN ASSOCIATION, f/k/a First Federal Savings and Loan Association of Clearwater, and Ronald J. Schultz, Property Appraiser, Pinellas County, Appellees-Respondents.
No. 70680.
Supreme Court of Florida.
August 18, 1988.
Rehearing Denied October 17, 1988.
*1268 Franz Eric Dorn, Appellate Atty., Thomas H. Bateman, III, Gen. Counsel and Robert I. Scanlan, Deputy Gen. Counsel, Tallahassee, for appellant-petitioner.
Charles M. Phillips, Jr., Palm Harbor, for appellees-respondents.
KOGAN, Justice.
We have for review the Second District Court of Appeal opinion in Department of Transportation v. Fortune Federal Savings and Loan Ass'n, 507 So.2d 1172 (Fla. 2d DCA 1987), in which section 337.27(3), Florida Statute (1985) was held invalid. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. The district court also certified the following question to this Court as one of great public importance:
Whether section 337.27(3), Florida Statutes (1985), which limits acquisition costs in eminent domain cases by allowing the state to condemn more property than is necessary to implement a valid public purpose, contravenes the Florida Constitution?
Id. at 1178. Because we see the central issue before this Court differently than did the district court, we deem it necessary to restate the certified question as follows:
Whether the public purpose of limiting acquisition costs under section 337.27(3), Florida Statutes (1985), which allows the state to condemn more property than is presently needed where it would cost more to condemn only part of the property, contravenes the Florida Constitution?
As restated, we answer the certified question in the negative and quash the opinion of the district court.
These proceedings began when the Florida Department of Transportation (DOT) filed a petition to acquire a parcel of land through the state's power of eminent domain. The parcel, owned by Fortune Federal Savings and Loan Association (Fortune), was needed for a road widening project planned by DOT. A bank branch owned by Fortune sits on the parcel, and it is undisputed that a taking of whole or part of the parcel will destroy the banking business. DOT admittedly only needs a portion of the parcel to complete its project.
At the hearing conducted pursuant to DOT's eminent domain petition, testimony indicated that if only a portion of the property were taken, Fortune would be entitled to $2,000,000 in business damages under section 73.071(3)(b), Florida Statutes (1985). DOT attempted to invoke section 337.27(3) which allows the state agency to take an entire parcel of land when it would cost the state less money than if only part of the tract were taken. Fortune contested the taking of the unneeded tract, arguing that to do so would violate the state constitutional prohibition against taking private property except for a public purpose and with full compensation. Art. X, § 6, Fla. Const. If DOT were only permitted to condemn the needed portion of the property, Fortune would be entitled to $2,225,000. That number represents the value of the condemned land ($225,000) plus business damages ($2,000,000). If DOT is permitted to take the entire tract, including the unneeded portion, Fortune would be entitled only to $480,000, representing the value of the entire, undivided tract of land. The trial court granted only the petition for the taking of that portion of the tract needed by DOT to complete its project. It did not reach the constitutional issues raised by Fortune.
On appeal the Second District Court of Appeal held section 337.27(3) unconstitutional as allowing a taking without a valid public purpose. The court ruled that saving the state money, in itself, was not a valid public purpose under the state constitutional guidelines. The court reasoned that allowing the state agency to take more property than necessary to complete its project in order to avoid the payment of business damages would deprive the owner of his private property without full compensation and without a valid public purpose.
Before analyzing the constitutional issues presented, we will examine the statutory provisions involved to discern precisely *1269 what is required or allowed by the legislation. Section 73.071(3)(b), Florida Statutes (1985), part of the chapter entitled "Eminent Domain," states:
Where less than the entire property is sought to be appropriated, any damages to the remainder caused by the taking, including, when the action is by the Department of Transportation ... for the condemnation of a right-of-way, and the effect of the taking of the property involved may damage or destroy an established business of more than 5 years' standing, owned by the party whose lands are being so taken, located upon adjoining lands owned or held by such party, the probable damages to such business which the denial of the use of the property so taken may reasonably cause; any person claiming the right to recover such special damages shall set forth in his written defenses the nature and extent of such damages... .
This provision entitles Fortune to recover $2,000,000 in damages if DOT is permitted to take only part of the property. If DOT takes the entire parcel, Fortune is not entitled to business damages under the statute.
The statute under scrutiny here, section 337.27(3), Florida Statutes (1985), permits the state agency to condemn more property than is necessary when the state agency saves money by doing so. The statute, enacted in 1984, states:
In the acquisition of lands and property, the department [of transportation] may acquire an entire lot, block, or tract of land if, by doing so, the acquisition costs to the department will be equal to or less than the cost of acquiring a portion of the property. This subsection shall be construed as a specific recognition by the Legislature that this means of limiting the rising costs to the state of property acquisition is a public purpose and that, without this limitation, the viability of many public projects will be threatened.
§ 337.27(3), Fla. Stat. (1985). The second sentence of the provision states the legislature's determination that limiting the rising cost of property acquisition is a public purpose. The pivotal issue before this Court is whether that public purpose is valid.
While it is true, as DOT argues, that the legislative statement of public purpose deserves some degree of deference, State v. Housing Finance Authority of Polk County, 376 So.2d 1158 (Fla. 1979), the ultimate question of the validity of that public purpose is a judicial question to be decided by a court of competent jurisdiction. Canal Authority v. Miller, 243 So.2d 131 (Fla. 1970); Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527 (Fla. 1929). Nonetheless, the role of the judiciary in determining whether the power of eminent domain is exercised in furtherance of a public purpose is narrow. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). With this limited standard of review in mind, we must examine the statute, as well as the enunciated public purpose, to determine whether each fulfills the requirements of the Florida Constitution.
In order to invalidate a statute that has a stated public purpose, the party challenging that statute must show that the stated purpose is arbitrary and capricious. The determination by the legislature of a public purpose, "while not conclusive, is presumed valid and should be upheld unless it is arbitrary or unfounded  unless it is so clearly erroneous as to be beyond the power of the legislature." State v. Miami Beach Redevelopment Agency, 392 So.2d 875, 886 (Fla. 1980). E.g., State v. Housing Finance Authority, 376 So.2d 1158 (Fla. 1979); Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971); State v. Reedy Creek Improvement District, 216 So.2d 202 (Fla. 1968); State v. Daytona Beach Racing and Recreational Facilities District, 89 So.2d 34 (Fla. 1956). Thus, the legislature's statement that section 337.27(3) reflects the public purpose of limiting property acquisition costs must be upheld unless that purpose is beyond the power of the legislature and is clearly erroneous.
In attempting to show that section 337.27(3) has no valid public purpose, Fortune argues that it is improper to require one private business to finance a *1270 public project, and thus reducing property acquisition costs at the expense of one business is beyond the power of the legislature. We cannot agree. It should be recognized that the full compensation demanded by our state constitution requires only that the condemning authority compensate the property owner for the full market value of the property taken. It is only by the will of the legislature that business damages may be awarded in certain situations which are properly limited by the legislature. In other words, the legislature has created a right to business damages, so it may also limit that right. There is no constitutional right to business damages. As the district court noted, business damages are a matter of legislative grace. The legislature may award them in one statute and take them away in another. Fortune has no vested right to those damages. Therefore, it can hardly be said that the forfeiting of business damages requires Fortune to shoulder the burden of financing a public project.
Accordingly, the only remaining question is whether reducing the cost of property acquisition is a valid public purpose in the context of eminent domain when the entire parcel in question is not needed for a present public project. To resolve this question it is important to distinguish between "public use" and "public purpose."
The term "public purpose" does not mean simply that the land is used for a specific public function, i.e. a road or other right of way. Rather, the concept of public purpose must be read more broadly to include projects which benefit the state in a tangible, foreseeable way. We believe that the purpose of cutting acquisition costs to expand the financial base for further public projects constitutes a valid public purpose under this definition. We find no reasonable justification for limiting, as Fortune argues we should, the definition of public purpose to that of public use. On the contrary, we believe that our decision is supported by the legislature's recognition of the need to reduce the costs of financing the vast growth this state will endure over the next several years.
We are aware of language in our opinion in Baycol, Inc. v. Downtown Development Authority, 315 So.2d 451 (Fla. 1975) to the effect that public purpose is virtually synonymous with public use. Id. at 455. However, we believe that such language is gratis dictum and therefore not binding on our decision here. Moreover, the Baycol decision did not involve a situation in which the legislature had enunciated a clear statement of public purpose, thus triggering the clearly erroneous standard needed to overcome such a legislative pronouncement. State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980).
The Baycol decision does present us with one standard which we must employ. "[E]minent domain cannot be employed to take private property for a predominantly private use... ." 315 So.2d at 455 (emphasis in original). Thus, if the condemning authority uses the property for an essentially nonpublic use, the condemnation is invalid.[*] In this case, there is no evidence that DOT intends to subject the property to a private use. Indeed, the evidence suggests that DOT has no present plans for the land not used in the highway widening project. In any event, Fortune has certainly not shown that the property will be privately used.
Accordingly, because Fortune has not sustained its burden of demonstrating that the public purpose stated by the legislature is clearly erroneous or arbitrary and unfounded, we uphold the constitutionality of section 337.27(3), Florida Statutes (1985). We answer the certified question, as restated, in the negative, and we quash the opinion of the Second District Court of Appeal and remand this case to the trial court below to enter an order of taking of the entire property.
It is so ordered.
*1271 EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT and GRIMES, JJ., concur.
NOTES
[*] However, future sale of the property to a private buyer is not prohibited by either this or the Baycol decision.