872 So.2d 970 (2004)
A CHOICE FOR WOMEN, INC., Edward Watson, M.D., and Monica Navarrete, Appellants/Cross-Appellees,
v.
FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION, Appellee/Cross-Appellant.
No. 3D02-3039.
District Court of Appeal of Florida, Third District.
April 21, 2004.
Rehearing and Rehearing Denied April 21, 2004.
*971 Larry Spalding, Miami, and Bonnie Scott Jones, for appellants.
Gregory J. Philo and George D. Shirejian, for appellee.
Thomas A. Horkan, Jr.; Paul Benjamin Linton; Ausley & McMullen and Stephen C. Emmanuel, Tallahassee, for members of the Florida Legislature as Amicus Curiae.
Before SCHWARTZ, C.J., and RAMIREZ, J., and NESBITT, Senior Judge.
Rehearing and Rehearing En Banc Denied April 21, 2004.

CORRECTED OPINION
PER CURIAM.
On consideration of appellee/cross-appellant's motion to correct clerical errors in the opinion, the Court withdraws the opinion issued on September 3, 2003, and substitutes the following corrected opinion in its place.
A Choice for Women, Inc., Edward Watson, M.D., and Monica Navarrete appeal an order of the Division of Administrative Hearings dismissing their petition to determine the invalidity of existing rules pertaining to Medicaid funding for abortions. Florida's Medicaid program provides funding for only those services for which it will receive federal reimbursement. Medicaid coverage exists for any medically necessary treatment, but pursuant to the Hyde Amendment to Title XIX of the Social Security Act,[1] federal reimbursement is only available for abortions if the life of the *972 mother is endangered by the pregnancy, or if the pregnancy is the result of rape or incest. We affirm the Division's ruling.
Navarrete has had epilepsy since childhood. She became pregnant in 2000 and suffered seizures during the pregnancy. She takes the drug Dilantin to control her seizures, which is a teratogenic drug that can cause birth defects. Her son was born with osteogenesis imperfecta.
When she again became pregnant, Navarrete was faced with suffering an increase in the gravity of her seizures if she stopped her medication or the possibility of having another child born with birth defects. In October 2001, Navarrete chose to have an abortion at a clinic called "A Choice for Women." Dr. Watson performed the procedure. At that time, Navarrete was thirty years old with three children. She received Aid to Dependent Children benefits, food stamps, and Medicaid. Navarrete had to delay payment of her utilities to pay some of the $200 cost. A private abortion fund paid the remaining costs.
Ten to twenty percent of Dr. Watson's patients have medical factors which cause complications during pregnancy. These patients require medically necessary abortions, but they are not in danger of death. The appellants/cross-appellees now challenge Florida Agency for Health Care Administration's ban on funding for medically necessary abortions as a violation of Florida's equal protection clause because funding exists for all necessary medical services for men.
The appellants/cross-appellees seek a determination that rules 59G-4.150, 59G-4.160, and 59G-4.230, Florida Administrative Code,[2] as well as certain portions of the Florida Medicaid Physician Coverage and Florida Medicaid Provider Reimbursement handbooks incorporated in those rules, are invalid. The rules were implemented pursuant to section 409.902, Florida Statutes (2000) which authorizes the Agency to make payments for medical services under Title XIX of the Social Security Act and state law.
The rules the appellants/cross-appellees challenge were previously challenged in Renee B. v. Florida Agency for Health Care Admin., 790 So.2d 1036 (Fla.2001). As in this case, the challengers in Renee B. were doctors and reproductive health clinics that provide abortions, and Medicaid-eligible women who needed medically necessary abortions. The Florida Supreme Court held that the Agency rules did not violate the Florida Constitution's right to privacy because Florida's Medicaid program imposes no restriction on access to abortion and leaves an indigent woman with the same range of choice as she would have if no subsidized health care existed. Id. at 1041.
Although the Florida Supreme Court declined to address the equal protection claim in Renee B., the court determined that "the abortions sought by the petitioners... are neither required nor optional under the federal program. Section 409.908 gives AHCA the authority to establish rules for reimbursement in accordance with state and federal law." Id. at 1039. The court relied heavily on Harris v. McRae, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) in reaching its conclusions.
In Harris, the Supreme Court determined that the lack of funding for medically necessary abortions for which federal reimbursement is unavailable is not an equal protection violation. See Harris, *973 448 U.S. at 326, 100 S.Ct. 2671. In analyzing that particular constitutional challenge, the Court concluded that the Hyde Amendment does not violate any constitutionally protected substantive rights and is not predicated on a constitutionally suspect classification.[3]Id. at 322, 100 S.Ct. 2671. Therefore, "the only requirement of equal protection is that congressional action be rationally related to a legitimate governmental interest." Id. at 326, 100 S.Ct. 2671. Because the restriction on abortion funding is rationally related to the legitimate governmental objective of protecting potential life, the lack of funding for medically necessary abortions is not a constitutional violation. Id. at 325, 100 S.Ct. 2671.
Childbirth has also been recognized in Florida as a legitimate state purpose because "[t]he state has an unqualified interest in the preservation of life." Krischer v. McIver, 697 So.2d 97, 103 (Fla.1997). Additionally, containing the cost of the Medicaid program by limiting services to those which are federally reimbursable is also a legitimate state purpose. See Department of Transp. v. Fortune Fed. Sav. and Loan Assoc., 532 So.2d 1267 (Fla. 1988) (purchase of more land than necessary in order to save state money was valid public purpose). The Agency rules are therefore rationally related to a legitimate state purpose.
The appellants/cross-appellees argue that the Florida Constitution gives greater protection than the Equal Protection Clause of the United States Constitution and urge a strict scrutiny standard of review. The appellants'/cross-appellees' argument is based on the 1998 amendment to Article I section 2 which added the words "female and male alike" to modify the term "natural persons." This argument is contradicted by the commentary of the Constitution Revision Commission. Frandsen v. County of Brevard, 800 So.2d 757, 759 (Fla. 5th DCA 2001). "In adding the term `female and male alike,' the Commission's intent was to secure equality for women in the Constitution." Id. at n. 4. Based on the Commission's commentary, we conclude that the Florida Constitution does not afford greater protection for sex-based classifications and such classifications are thus not subject to strict scrutiny.
We therefore hold that the Agency rules here challenged do not violate the Equal Protection Clause of the Florida Constitution because they are rationally related to the legitimate state interests of protecting life and containing costs.
Affirmed.
NOTES
[1] 42 U.S.C. § 1396 et seq. (1976).
[2] The rules incorporate by reference the Florida Medicaid Provider Reimbursement Handbook and the Florida Medicaid Hospital Coverage and Limitations Handbook which restrict reimbursement for induced abortions and related procedures to only those done to save the life of the mother, or when the pregnancy is the result of rape or incest.
[3] "[T]he principal impact of the Hyde Amendment falls on the indigent. But that fact does not itself render the funding restriction constitutionally invalid, for this Court has held repeatedly that poverty, standing alone is not a suspect classification." Harris, 448 U.S. at 323, 100 S.Ct. 2671.