641 So.2d 40 (1994)
BROWARD COUNTY, etc., Petitioner,
v.
Bharat PATEL, et al., Respondents.
No. 81416.
Supreme Court of Florida.
May 19, 1994.
Rehearing Denied August 25, 1994.
*41 John J. Copelan, Jr., County Atty., and Anthony C. Musto, Asst. County Atty., Fort Lauderdale, for petitioner.
David D. Welch, Welch & Finkel, Pompano Beach, and Robert A. Ware, English, McCaughan & O'Bryan, P.A., Fort Lauderdale, for respondents.
Thornton J. Williams, Gen. Counsel, and Thomas F. Capshaw and Marianne A. Trussell, Asst. Gen. Counsels, Tallahassee, amicus curiae, for State, Dept. of Transp.
Will J. Richardson, Richardson Law Office, P.A., Tallahassee, amicus curiae, for Bharat Patel, and Warren and Selina Picillo.
KOGAN, Justice.
We have for review the following question certified to be of great public importance:
MAY THE GOVERNMENT SUBMIT EVIDENCE THAT THE SEVERANCE DAMAGES OF A CONDEMNEE MAY BE CURED OR LESSENED BY ALTERATIONS TO THE CONDEMNEE'S PROPERTY WHEN THOSE ALTERATIONS REQUIRE THE GRANT OF A VARIANCE FROM THE APPROPRIATE GOVERNMENTAL ENTITY HAVING JURISDICTION OVER THE PROPERTY?
Patel v. Broward County, 613 So.2d 582, 583 (Fla. 4th DCA 1993). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
*42 The Respondents, Bharat Patel and Warren and Selina Picillo, owned adjoining motels along Ocean Boulevard in Broward County. Broward County initiated eminent domain proceedings to acquire a narrow strip of land along the road front for purposes of widening the road. The crux of the legal question before us is that the owners will not be able to have the same number of parking spaces at their motels without making physical changes that will require future zoning variances. With respect to severance damages the trial court instructed the jury that, in determining just compensation, it could consider whether zoning variances reasonably would be available. Broward County also was permitted to introduce evidence showing how variances together with alterations to the property would "mitigate" the loss caused by the taking. The Fourth District reversed on the authority of Williams v. State Department of Transportation, 579 So.2d 226 (Fla. 1st DCA 1991), and State Department of Transportation v. Byrd, 254 So.2d 836 (Fla. 1st DCA 1971). However, the district court also certified the question for review in this Court.
The central policy of eminent domain law is that owners of property taken by a governmental entity must receive full and fair compensation. Art. X, § 6, Fla. Const. In construing the Florida Constitution on this question, this Court elsewhere has stated:
"Full compensation" within the meaning of the Constitution must be determined by reference to the state of affairs that would have existed absent any condemnation proceeding whatsoever, i.e. the owners retaining ownership.
Florida Dep't of Revenue v. Orange County, 620 So.2d 991, 992 (Fla. 1993). Admittedly, this constitutionally required comparison becomes somewhat more complex when, as in the present case, only a fraction of the property is being condemned and the possibility of future changes in or variances from the applicable land-use restrictions may affect the value of the property.
The trial judge and jury below apparently concluded that such a possibility may be gauged by determining the value of the land before the taking, subtracting the value after the taking, and then further subtracting the alleged added value that could be created by improvements made possible by future variances. The district court, on the other hand, felt that evidence of a probable future variance is generally irrelevant, citing Williams and Byrd as authority. However, the district court did express doubts in light of our statement in Troup v. Bird, 53 So.2d 717, 720 (Fla. 1951), that the granting of a variance is generally equivalent to rezoning,[1] and the fact that probable future rezoning has been held relevant in determining an award. E.g., Board of Comm'rs of State Insts. v. Tallahassee Bank & Trust Co., 100 So.2d 67 (Fla. 1st DCA 1958). We find these doubts well founded, though we also do not agree with the approach used by the trial court.
The leading authority in the field of eminent domain law has stressed that, in considering contingent future changes in zoning during a condemnation proceeding,
the property must not be evaluated as though the rezoning were already an accomplished fact. It must be evaluated under the restrictions of the existing[] zoning with consideration given to the impact upon market value of the likelihood of a change in zoning.

... .
The rule has been extended[] to consideration of the reasonable probability that a variance will be issued.
4, Julius L. Sackman, Nichols' The Law of Eminent Domain, § 12C.03[2], at 12C-88 to -90 (rev. 3d ed. 1994) (emphasis added). In sum, the party asserting the availability of a future rezoning or variance must demonstrate a reasonable probability that the rezoning or variance will be granted within a reasonable period of time.[2] This is a question *43 of fact. Id., § 12C.03[3], at 12C-93. We agree with this analysis.
The Nichols treatise goes on to describe how "reasonable probability" is determined. For example, the granting of an earlier and isolated variance or change may be irrelevant, but the granting of many similar variances or changes may be highly persuasive. Id. at 12C-94. Expert testimony as to "reasonable probability" is impermissible if based merely on speculation or groundless prognostication, but can be admitted where necessary to explain previously admitted factual evidence tending to prove or disprove the existence of a reasonable probability. See id. at 12C-96 to -97. That testimony may include an evaluation of the degree of probability that reasonably exists, since contingencies of this type may vary in their probability.[3] Again, such testimony must be based on, and must at least attempt to explain, factual matters already submitted in evidence.[4] Opposing parties of course may rebut, contradict, or impeach through any method permitted by the applicable Rules of Evidence and precedent; and failure to do so will justify the finder of fact in ruling in favor of the party shouldering the burden, provided the burden has been met.
Once the finder of fact determines that a reasonable probability does or does not exist, the finder then must separately determine the actual market value of the property on the day it was taken, together with severance damages and other costs. If a probability does exist, its effect on fair market value and severance damages obviously must be gauged. Generally, expert evidence from persons qualified in the valuation of real estate is relevant to this question.[5]
We stress, as does the Nichols treatise, that the only issue in this phase of the proceedings is the price that would be paid by a knowledgeable buyer willing but not obliged to buy, to a knowledgeable owner willing but not obliged to sell, in light of the probability of rezoning or probability of a variance as of the day of the taking. See id., § 12C.03[2], at 12C-88. Obviously, a knowledgeable buyer would offer less value for property that may require significant future expenses and more value for property with minimal future expenses. Likewise, the value of future improvements that may be probable also will factor into the equation when a knowledgeable buyer determines fair-market price. We stress that the availability of a future "cure" or "mitigation of damages"  or more accurately, the probability that lost value can be restored to the property by contingent future actions[6] in spite of the taking  is relevant only to the extent it may have an impact upon fair market value as of the moment of the taking, and not otherwise.[7]
*44 We also are persuaded to this approach by its inherent fairness and logic. While Florida has long recognized that the reasonable probability of rezoning may be considered when determining the value of condemned property, we see no reason why it may not also be considered in determining severance damages. The probability that the property's value may be enhanced or diminished by changes to land-use regulations is a factor that the trier of fact should be permitted to consider in light of expert testimony on the way this probability affected the value of the property and the severance damages on the day of the taking.
If such future contingencies are not properly factored into the equation along with the risks associated with them, then two equally unfair scenarios can result. First, if the future contingency is not considered at all, then the condemnee after severance might be able to obtain a land-use change that substantially reduces actual losses caused by severance, thereby resulting in a windfall at taxpayers' expense. In effect, the condemnee would obtain the full value restored by the land-use change and modifications, minus associated expenses. Likewise, if the future land-use change is treated as a certainty but then is later denied, the condemnee would be forced to bear the entire loss. Such an approach would force the condemnee to shoulder all of the risk associated with the future contingency, which is unfair to the condemnee.
These two scenarios would fly in the face of widely accepted principles of valuing condemned property to reflect actual market conditions; and those conditions obviously will be affected by future contingencies and associated risks that could increase or decrease property values. The same principles logically apply to a land-use or zoning variance whether the whole property is condemned or a portion is severed by condemnation.[8]
A close examination of the record reveals significant points of departure between our analysis here and what the trial court allowed. Foremost, Patel was awarded damages less than the least amount supported by any reading of the record. Indeed, the award was less than the amount advocated by the county's own expert witnesses. This was plain error. Likewise, it is obvious that the fact finder below treated the future contingencies at issue here as though they were certain to occur and, in any event, awarded the condemnees nothing for the lost property value and other costs associated with converting other areas of their land to replace lost parking areas and thereby reduce severance damages. This also was error.
For the above reasons, the decision below is quashed and this cause is remanded for further proceedings consistent with our views here. On remand, the trial court obviously must be instructed to conduct a new trial on *45 all issues using the guidelines outlined in this opinion, assuming the parties still cannot reach a settlement. We answer the certified question in the affirmative as qualified above. Finally, we disapprove the decisions in Williams and Byrd solely to the extent they may be viewed as inconsistent with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, McDONALD, SHAW and HARDING, JJ., concur.
NOTES
[1] We continue to adhere to this view.
[2] The analysis may be different where there is evidence that the governmental agency prior to the taking has exercised its regulatory authorities in a way to arbitrarily depress the value of the property in question, such as to lessen the agency's potential liability. 4, Julius L. Sackman, Nichols' The Law of Eminent Domain, § 12C.03[2], at 12C-90 (rev. 3d ed. 1994).
[3] Obviously, the trial court must first determine whether a jury question actually exists as to probability. If the possibility of rezoning or a variance is a highly speculative contingency, such that the trial court finds no evidence to render it "probable," then a jury question does not exist. The trial court's conclusion in this regard will be sustained on appeal if there is record support for it.
[4] In this regard, the expert generally should not assume either a "best case" or a "worst case" scenario, but rather the scenario that is most probable. Thus, experts properly may be questioned as to their assumptions in this vein, and the trial court on a proper motion may instruct the experts to confine their responses solely to the scenario that is most probable.
[5] We agree, however, that the finder of fact may not establish a fair market value that is more or less than the greatest or least amount for which there is record support. Doing otherwise is plain error.
[6] A "duty to cure" or "a duty to mitigate of damages" is something of a misnomer in this context, because neither party has an obligation to cure or mitigate anything. We are concerned solely with the value of the property as it existed on the day of the taking. Future contingencies obviously will affect the fair market price and therefore are inherently factored in to the equation. If a reasonable and prudent buyer would pay more in light of the future contingencies, then this evidence should be considered, even if the present owner has no intention of effectuating such a "cure."
[7] When admitting evidence of future contingencies, however, the trial court must ensure that the finder of fact does not mistakenly assume that their cost or value can be considered apart from the effect on market value, such as by simply assuming that these contingencies must inevitably occur and then valuing the property accordingly. After all, we are dealing with contingencies here, not certainties. There always is a risk that such costs or future values may prove greater or less than a knowledgeable buyer might assume. Knowledgeable buyers will take this risk into account in deciding on a fair market value, so that the risk is fairly allocated between both buyer and seller. It thus is plain error to allocate the entire risk to either the condemnor or the condemnee when future contingencies are at stake: Such an allocation is possible only in cases in which the future event is absolutely certain to happen on the day of the taking, such as where the condemning agency can make a legally binding guarantee that rezoning or a variance will be granted. To prevent juror confusion, the trial court and the parties may wish to see that testimony as to future costs and values is not given in the form of contingent future dollar amounts, but only in terms of the effect on the property's value as of the moment of the taking. A trial court certainly has discretion to confine testimony in this manner.
[8] We do agree with respondents that any loss to them by virtue of the appropriation of other areas of their property to provide for parking should be taken into account in determining fair market value on the day of the taking, along with associated reasonable costs. Also, Florida law indicates that business damages sometimes may be available in addition to severance damages, provided the two do not duplicate one another. E.g., Glessner v. Duval County, 203 So.2d 330 (Fla. 1st DCA 1967). In the proceedings below it appears that an expert certified public accountant testified that business damages were not appropriate in cases involving motels. We believe this is a question more properly decided by the trial judge upon a pretrial motion to determine whether a jury question exists as to business damages. Witnesses should never be permitted to tell jurors, in effect, that a jury question is nonexistent when jurors in fact are being called upon to decide that question.