651 So.2d 180 (1995)
Elgin THOMPSON, Appellant,
v.
FLORIDA DRUM COMPANY d/b/a Pensacola Shipyard, Appellee.
FLORIDA DRUM COMPANY, d/b/a Pensacola Shipyard, Appellant,
v.
Elgin THOMPSON, Appellee.
Nos. 93-2052, 93-2904.
District Court of Appeal of Florida, First District.
February 21, 1995.
*181 O'Gwen L. King, of King & Associates, P.A., Pensacola, for Elgin Thompson.
Larry Hill of Moore, Hill, Westmoreland, Hook & Bolton, Pensacola, for Florida Drum Company d/b/a Pensacola Shipyard.

ON MOTION FOR REHEARING AND MOTION FOR CERTIFICATION
We withdraw our opinion filed August 12, 1994, and issue the following opinion:
BARFIELD, Judge.
In these consolidated appeals we have Elgin Thompson complaining of error resulting in a defense verdict for Pensacola Shipyard, and Pensacola Shipyard complaining that the trial judge erred in denying it an attorney fee award against Thompson. Because we hold that the trial judge erred in admitting, over Thompson's objection, evidence of insurance available to Thompson to mitigate his damage, and erred in instructing the jury that Eric Lundquist and Bud Schumann were employees of Elgin Thompson, we reverse the judgment, grant a new trial and find it unnecessary to address the other asserted errors.
In March, 1991, Thompson delivered his yacht to Pensacola Shipyard, as he had done in the past, to have the yacht pulled from the water for repairs and maintenance. Pursuant to an agreement reached between the parties, the shipyard lifted the yacht from the water and placed it upon longneck jack stands so that the repairs could get underway. To the horror of all a gusty wind blew. The yacht fell and suffered damage. Thompson sued the shipyard alleging negligence in one count and contract breach in another count. The shipyard answered alleging it was either Thompson's own fault or nature's fault that his boat fell down and broke.
Pensacola Shipyard found out that Thompson had insurance coverage that would repair the boat. It wanted to use this information at trial to show that Thompson failed to mitigate damages by not having his insurance pay for repairs and allowing further damage to accrue. Thompson sought to exclude this information about his insurance because it had no bearing on the issues of liability and damages. The trial judge ruled in favor of the shipyard, reasoning that Thompson had a duty to take whatever steps reasonably necessary to mitigate damages, and by failing to claim against his insurer, he failed to do so.
The damage mitigation issue would only be relevant to the contract breach claim as contended by the shipyard. Notwithstanding Thompson's assertion on appeal that it was *182 "understood" that he had abandoned the contract count, the record reflects no voluntary dismissal of that count. Pensacola Shipyard says it never knew of any abandonment, but acknowledges that the case was sent to the jury only on the negligence claim.
It is our opinion that regardless of the theory of recovery, negligence or contract, it was error to allow the jury to be apprised of Thompson's insurance coverage. There was no provision of the contract requiring Thompson to maintain insurance against loss during the period of repair. Florida has long recognized the concern in negligence cases that the jury's knowledge of a defendant's insurance coverage may result in the jury attributing liability where none exists, because of sympathy and the belief that the financial burden would not be born by the defendant. Carls Markets v. Meyer, 69 So.2d 789 (Fla. 1953). The same potential for improper jury influence has been found to exist when the plaintiff has insurance coverage available to ameliorate the loss. Crowell v. Fink, 135 So.2d 766 (Fla. 1st DCA 1961). Had Thompson chosen to seek recovery from his insurer, it would have been no benefit to Pensacola Shipyard, because it could not have set off the insurance coverage against its own financial liability. Dynair Tech of Fla. v. Cayman Airways, 558 So.2d 30 (Fla. 3d DCA 1989). It is not a material fact in this case that Thompson could have called upon his insurer to provide money to pay for repairs possibly expediting the work and reducing the exposure to further damage. Pensacola Shipyard could have accomplished the same result by immediately repairing the boat and maintaining its position that Thompson was responsible for all of the repairs. Similarly, it would not be material whether Thompson was wealthy and could have provided the money to pay for the repairs. Such circumstances have no bearing on the liability of the parties. Extraordinary efforts on the part of a plaintiff to mitigate are not required. Hilsenroth v. Kessler, 446 So.2d 147 (Fla. 3d DCA 1983).
The fear of improper jury influence present in the cases cited above is very much present in this case. We are unable to conclude that the admission of the evidence of Thompson's insurance did not affect the jury's verdict. The judgment is reversed, and the case is remanded for a new trial.
Upon retrial of this case, the trial judge is cautioned against instructing the jury that Lundquist and Schumann were employees of Thompson in the work they performed on Thompson's boat. Based on the record before us for review, it is clear they were independent contractors. Unless the evidence at trial is remarkably different from that under review, it would be error to instruct the jury as was done in the first trial. The evidence will dictate whether any preemptive charge is warranted or whether a jury question is presented.
Because it appears that the contract breach claim is still pending before the trial court and we believe the matter is of great public importance, we certify to the Florida Supreme Court the following question:
In an action for breach of contract may the breaching party present evidence of the injured party's casualty insurance in mitigation of damages?
ALLEN and WOLF, JJ., concur.