LEWIS, J.
In this case, we review System Components Corp. v. Department of Transportation, 985 So.2d 687 (Fla. 5th DCA 2008), in which the Fifth District Court of Appeal certified that its decision directly conflicts with the decision of the Fourth District Court of Appeal in State Department of Transportation v. Tire Centers, LLC, 895 So.2d 1110 (Fla. 4th DCA 2005). We thus possess and exercise our discretionary jurisdiction to resolve this conflict. See art. V, § 3(b)(4), Fla. Const. Here, we must consider whether an award of business damages in an eminent-domain action under section 73.071(3)(b), Florida Statutes (2004), should include and account for the actual economic realities of the business’s operations given its relocation following a partial taking. As more fully explained in our analysis, we approve the Fifth District’s decision in System Components and disapprove the Fourth District’s decision in Tire Centers because we agree that the actual extent of harm suffered by an affected business is the “sine qua non ” of any eminent-domain business damages awarded pursuant to section 73.071(3)(b). Sys. Components, 985 So.2d at 693.[1] Due to the inherent nature of “damages” in this context, business damages “are not intended to be a windfall unconnected with any out-of-pocket loss.” Id. at 690.[2] For these reasons, when a qualified partial taking destroys a business at its prior location, and the land/business owner chooses to relocate, the resulting business damages are measured by the “probable” financial impact “reasonably” suffered as a result of the taking. § 73.071(3)(b), Fla. Stat. (2004); see also Sys. Components, 985 So.2d at 689-93. Under the circumstances presented here, we therefore conclude that if an affected bttsiness chooses to relocate, its business damages must be determined in light of its continued existence at its new location.
BACKGROUND
The Condemned Property and the Affected Business
On May 13, 2004, the Florida Department of Transportation (“FDOT”) filed an eminent-domain petition pursuant to chapters 73 and 74, Florida Statutes (2004). The petition involved several parcels, which FDOT requested permission to condemn for purposes of expanding a road right-of-way. The overall taking was necessary to widen a portion of West State Road 40 from S.W. 85th Avenue to and including the intersection located at 52nd Avenue in Ocala, Florida.
A tract of real property labeled parcel 130 (6750 West State Road 40, Ocala, Florida) was part of this proposed taking and belonged to the petitioner, System Components Corporation. The Fifth District accurately described System Components as “a wholesale distributor of fluid purification control and instrumentation ..., [which] has exclusive Florida distributor arrangements with a number of manufacturers and service customers in food processing, drug manufacturing, municipal water and other related areas.” Sys. Components, 985 So.2d at 688 n. 1. System *972 Components receives fluid-purification component parts from manufacturers and then assembles, repackages, and ships completed systems to its Florida customers. There is virtually no walk-in business; instead, System Components’ physical location simply functions as a point of assembly and distribution. Prior to the taking, parcel 130 consisted of 1.774 acres and contained a 5000-square-foot, single-story building, from which System Components conducted its distribution and service business. The building included front-office and warehouse areas. Additionally, parcel 130 provided System Components sufficient land to accommodate future expansion. In contrast, the eventual taking and demolition bisected System Components’ building and reduced parcel 130 to .648 acres, which the parties agreed rendered the remaining land unusable and of nominal value due to required setback lines that precluded rebuilding.
FDOT proceeded under the quick-take procedures provided in chapter 74, Florida Statutes. See § 74.011, Fla. Stat. (2004) (“In any eminent domain action, properly instituted by and in the name of ... the Department of Transportation ..., the petitioner may avail itself of the provisions of this chapter to take possession and title in advance of the entry of final judgment.” (emphasis supplied)). Pursuant to section 74.051(2) and a stipulated order of taking entered on July 13, 2004, FDOT deposited into the circuit-court registry a good-faith estimate of the “full compensation” due to System Components under article X, section 6 of the Florida Constitution (i.e., compensation for (1) the value of the land, (2) associated ajopurtenances and imjorove-ments, and (3) severance damages[3]). The deposited amount agreed to by both parties was $348,300 ($88,300 for the value of the condemned land, $109,400 for appurtenances and improvements, $130,900 for severance damages, and $19,700 to demolish a portion of the building left standing on the remainder).
The taking occurred on July 22, 2004, and System Components sought and obtained FDOT’s permission to remain on the property pending demolition. FDOT and System Components entered into a lease agreement through which System Components leased back its prior property at $2000 per month for a five-month term ending in December 2004. Subsequently, System Components entered into an agreement with a third party to lease separate warehouse space in another area of Ocala for $2068 per month for a one-year term (October 1, 2004 through September 30, 2005), which System Components was later forced to extend due to the delayed construction of its new facility ($3000 per month for an additional three months). During this time, George Kirkland, System Components’ principal, sought to continue the business while also obtaining a permanent relocation site. As part of this process, Kirkland (1) consulted eomznercial real-estate brokers to obtain a suitable relocation site; (2) hired an architect and an engineer to design and prepare the replacement site and building (as required by Marion County); and (3) rehired a former employee to accomplish the eventual move to the relocation site. To finance these efforts, Kirkland and System Components were forced to incur additional debt.
On October 5, 2004, System Components purchased new land in an area of Ocala *973 approximately eleven miles from its prior location. Kirkland testified that land near his prior location had become scarce and more expensive, so he decided to move the business further from the 1-75 corridor to a location where land was more plentiful and less expensive. On December 23, 2005, the new building was completed, and System Components relocated from its temporary, leased location.
The Business-Damages Trial
Prior to trial, the parties agreed that System Components qualified for statutory business damages under section 73.071(3)(b), Florida Statutes (2004), which are not part of the “full compensation” guaranteed by the Florida Constitution. See, e.g., Tampa-Hillsborough County Expressway Auth. v. K.E. Morris Alignment Serv., Inc., 444 So.2d 926, 928-29 (Fla.1983). The only remaining issue involved the proper measure of business damages in light of System Components’ relocation and continued existence. As the Fifth District later explained:
During the litigation, relying on section 73.071(3)(b), Florida Statutes, and Florida Department of Transportation v. Tire Centers, LLC, 895 So.2d 1110 (Fla. 4th DCA 2005), System Components filed a motion in limine seeking to exclude all evidence of what it terms “off-site cure,” i.e., that Systems Components was continuing to operate in another location. The trial court denied the motion, expressing disagreement with the Tire Centers decision and undertaking to distinguish it.
Sys. Components, 985 So.2d at 689.
Specifically, System Components maintained that eminent-domain proceedings are solely concerned with the land taken and the resulting damages to the condemnee. Therefore, in the view of System Components, it was entitled to the “total-take” value of its business as though it had ceased to exist on the date of taking. This position was consistent with the decision of the Fourth District in Tire Centers, which was decided on substantially similar facts and held:
Eminent domain law focuses only on the land taken, notwithstanding that in a case such as this a substantial portion of lost goodwill may possibly be recaptured by way of a nearby relocation. As such, the taking of the specific property at issue is the sole focus of business damages under section 73.071(3)(b). If the legislature had intended business damages to be subject to mitigation by an off-site cure, it could have easily done so. Consequently, we find that the trial court did not err by excluding any consideration of mitigated business damages by way of an off-site cure.
Tire Centers, 895 So.2d at 1113. FDOT resisted the application of Tire Centers and asserted that it was the constitutional duty of the trial court not to apply this precedent because, in FDOT’s view, the Fourth District had erroneously “legislated” and thereby exceeded its authority to construe section 73.071(3)(b).[4] The trial court eventually refused to follow Tire Centers and, correspondingly, denied the motion in limine.
During trial, which lasted from February 13, 2006, until February 24, 2006, the *974 court permitted each side to present expert testimony concerning the extent of the business damages sustained by System Components and, further, charged the jury that it was to determine (1) the total value of the business on the date of taking; and (2) the business damages sustained by System Components in light of its relocation and continued existence. In response, the jury returned a verdict determining each valuation based upon the testimony presented by System Components’ experts: (1) the business’s total value derived from an income-based approach[5] — $2,394,964; and (2) System Components’ business damages in light of its relocation and continued existence — $1,847,911.[6]
On July 14, 2006, the trial court entered a final judgment, which awarded System Components the latter figure and deducted the value of the good-faith registry deposit to avoid the award of duplicative damages. Cf., e.g., Glessner v. Duval County, 203 So.2d 330, 335 (Fla. 1st DCA 1967) (explaining that there may be some overlap between severance and business damages; if so, the condemnee is not entitled to double recovery). The remaining balance of business damages awarded to System Components totaled $999,611. System Components later sought review of this judgment in the appropriate district court of appeal.
The Appeal to the Fifth District
On appeal, System Components asserted that the trial court erred by not following Tire Centers, which was then-binding precedent for all Florida trial courts. See, e.g., Pardo, 596 So.2d at 666. System Components offered two basic claims to support its contention that it was entitled to the “total-take” value of its business: (1) eminent-domain cases are in rem proceedings, which exclusively concern the land subject to taking and any remainder (i.e., the “parent tract”); and (2) the trial court imper-missibly altered the text of section 73.071(3)(b), Florida Statutes, by reading in a duty to mitigate damages beyond the boundaries of the parent tract. See Appellant’s Initial Brief at 5-15, Sys. Components Corp. v. Fla. Dep’t of Transp., 985 So.2d 687 (Fla. 5th DCA 2008) (No. 5D06-2864). Conversely, FDOT asserted that the trial court was not required to follow Tire Centers because, in that decision, the Fourth District usurped the role of the Legislature by excluding evidence of off-site mitigation even though section 73.071(3)(b) is silent with regard to this issue. See Answer Brief of Appellee at 9-23, Sys. Components Corp. v. Fla. Dep’t of Transp., 985 So.2d 687 (Fla. 5th DCA 2008) (No. 5D06-2864).
In a well-reasoned opinion, the Fifth District refused to adopt the extreme positions advanced by either party. First, the district court rejected the position of System Components that the Legislature intended section 73.071(3)(b) to compensate a fully functioning, relocated business by *975 awarding it the total value of its operations as though it had ceased to- exist on the date of taking:
Application of the analysis in Tire Centers would mean that a fully functioning business would receive a windfall of over a million dollars for damages it did not suffer. Rather than recover its business damages, it would recover something else, a form of compensation for the taking of part of its property measured by the full value of the business, as though it had ceased to exist. We conclude that this is not what section 73.071 says or intends.
Sys. Components, 985 So.2d at 689-90. Second, the district court rejected FDOT’s contention that the doctrine of avoidable consequences (i.e., the “duty to mitigate” damages) requires off-site relocation whenever necessary and possible:
Although the statute does not require relocation or a damage calculation based on what damages would be if the business were to hypothetically relocate, if a business does elect to relocate and to continue in existence, the business can only recover its damages — i.e., the amount of harm to its business resulting from the taking of its location. Where, as here, the business has elected to continue in business in a different location, the business should be fully compensated for all damages done to the business caused by the taking, but it should not be compensated based on the fiction that it has been entirely lost.
Id. at 692-93 (some emphasis supplied). Supported by this rationale, the Fifth District affirmed the award of business damages as determined by the trial court and certified conflict with Tire Centers. See Sys. Components, 985 So.2d at 693.
We subsequently accepted jurisdiction and now resolve this certified conflict. See Sys. Components Corp. v. Fla. Dep’t of Transp., 990 So.2d 1060 (Fla.2008) (table).
ANALYSIS
This case presents a question of statutory interpretation, which is subject to de novo review. See, e.g., Fla. Dep’t of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So.2d 1260, 1264 (Fla.2008). In particular, we must determine whether an award of business damages in an eminent-domain action under section 73.071(3)(b), Florida Statutes (2004), may take into consideration only the actual damages sustained by the affected business when there is a relocation following a partial taking. After reviewing the plain text of the statute[7] and considering pertinent precedent and legal commentary, we hold that a qualifying business that chooses to relocate must receive a business-damages award based upon its continued existence and the true economic realities of the given case.
Relevant Eminent-Domain Doctrine and an Overview of Statutory Business Damages

Eminent Domain and “Full Compensation ”

The power of eminent domain is an inherent aspect of sovereignty vested in the government of Florida, “which is circumscribed by, rather than conferred by, constitution or statute.” City of Ocala v. Nye, 608 So.2d 15, 17 (Fla.1992) (citing Peavy-Wilson Lumber Co. v. Brevard County, 159 Fla. 311, 31 So.2d 483 (1947)). While it remains “[t]he central policy of eminent domain ... that owners of property taken by a governmental entity *976 [must] receive full and fair compensation,”[8] both this Court and the United States Supreme Court have very clearly held that business damages are not a constitutionally required component of “just”[9] or “full” [10] compensation. See, e.g., Tampa-Hillsborough County Expressway Auth. v. K.E. Morris Alignment Serv., Inc., 444 So.2d 926, 928 (Fla.1983) (“Business damages ... fall in the category where compensation is not constitutionally required but depends on legislative authorization.”); Jamesson v. Downtown Dev. Auth. of Fort Lauderdale, 322 So.2d 510, 511 (Fla.1975) (“The right to business damages is a matter of legislative grace, not constitutional imperative. Lost profits and business damages are intangibles which generally do not constitute ‘property’ in the constitutional sense.” (footnote omitted)); Mitchell v. United States, 267 U.S. 341, 345, 45 S.Ct. 293, 69 L.Ed. 644 (1925) (substantially similar); Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 675, 43 S.Ct. 684, 67 L.Ed. 1167 (1923) (substantially similar). Thus, the “full compensation” mandated by article X, section 6 of the Florida Constitution is restricted to (1) the value of the condemned land,[11] (2) the value of associated appurtenances and improvements, and (3) damages to the remaining land (i.e., severance damages[12]). See, e.g., State Road Dep’t v. Bramlett, 189 So.2d 481, 484 (Fla.1966); cf. United States v. Bodcaw Co., 440 U.S. 202, 204, 99 S.Ct. 1066, 59 L.Ed.2d 257 (1979) (“Perhaps it would be fair or efficient to compensate a landowner for all the costs he incurs as a result of a condemnation action.... But such compensation is a matter of legislative grace rather than constitutional command”). Conversely, when a governmental entity actually “takes” or appropriates the business for its proprietary use, the government is constitutionally required to compensate the business owner(s) for the reasonable value of the appropriated business. See generally Kimball Laundry Co. v. United States, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949) (involving the U.S. Army’s wartime acquisition of a well-established, profitable laundry business).

Statutory Business Damages

Despite the general eminent-domain rule that business damages are intan *977 gible, consequential injuries, which the government is not constitutionally required to compensate,[13] Florida has elected to provide such compensation through statute since 1933. See ch. 15927, Laws of Fla. (1933); Martha L. Koval & Andrew B. Sasso, The Bottom Line on Eminent Domain Business Damages, Fla. B.J., June 1986, at 59. However, this statutory allowance is narrow, and the condemnee bears the burden of specifically pleading and satisfying each of the requirements provided in the business-damages statute, which is currently codified at section 73.071(3)(b), Florida Statutes. See K.E. Morris, 444 So.2d at 929 (“[A]ny ambiguity in section 73.071(3)(b) should be construed against the claim of business damages, and such damages should be awarded only when such an award appears clearly consistent with legislative intent.”); City of Fort Lauderdale v. Casino Realty, Inc., 313 So.2d 649, 652 (Fla.1975) (Overton, J., specially concurring; adopted as majority) (holding that the condemnee bears the burden of proving the existence and extent of business damages); Fla. R. Civ. P. 1.120(g) (“When items of special damage are claimed, they shall be specifically stated.”).
Section 73.071(3)(b), Florida Statutes (2004), provides as follows (our bracketed numerals and altered formatting separately indicate each statutory requirement):
(3)The jury shall determine solely the amount of compensation to be paid, which compensation shall include:
[[Image here]]
(b) Where
less than the entire property is sought to-be appropriated,[14]® any damages to the remainder caused by the taking [i.e., severance damages], including,
when the action is by the Department of Transportation, county, municipality, board, district or other public body for
the condemnation of a right-of-way, and
the effect of the taking of the property involved may damage or destroy an established business[15]® of more than U years’ standing before January 1, 2005, or the effect of the taking of the property involved may damage or destroy an established business of more than 5 years’ standing on or after January 1, 2005,

oimed by the party whose lands are being so taken,[

16

]®

located upon adjoining lands[17]® owned or held by such party, the p-roba- *978 ble damages to such business which the denial of the use of the property so taken may reasonably cause;
any person claiming the right to recover such special damages shall set forth, in his or her written defenses the nature and extent of such damages.
(emphasis supplied) (formatting altered); see also Florida Eminent Domain, supra, § 9.46, at 9-62 — 9-63; Koval & Sasso, supra, at 60-61. This statute implements the constitutional requirement of compensating severance damages and provides for business damages under specified circumstances. See Fla. Dep’t of Transp. v. Ness Trailer Park, Inc., 489 So.2d 1172, 1180-81 (Fla. 4th DCA 1986).
Severance and business damages are both available in appropriate cases, but they should not be confused. Severance damages are part of the constitutional guarantee of “full compensation” and reimburse the owner for the reduction in value the taking causes to any remaining land, while business damages are a creature of statute and compensate the owner for “probable” reductions in business value, business losses, or increased business expenses “reasonably cause[d]” by the taking. § 73.071(3)(b), Fla. Stat. (2004); see Sys. Components, 985 So.2d at 690-91 (citing Blockbuster, 714 So.2d at 1224); Ness Trailer; 489 So.2d at 1181; Florida Eminent Domain, supra, §§ 9.34, 9.35, at 9-46 — 9-47. Where the two forms of damages overlap, double recovery is prohibited. See Mulkey v. Fla. Div. of Admin., 448 So.2d 1062, 1066 (Fla. 2d DCA 1984). Business damages are not part of the “full compensation” guaranteed by the Florida Constitution, and the State is not required to pay interest on these damages or to include these damages as part of its “good faith” registry deposit. See Behm v. Div. of Admin., 383 So.2d 216, 219 (Fla.1980) (citing Div. of Admin. v. Pink Pussy Cat, Inc., 314 So.2d 192 (Fla. 1st DCA 1975)); State Road Dep’t v. Abel Inv. Co., 165 So.2d 832, 833-34 (Fla. 2d DCA 1964).
In more informal terms, the business-damages portion of the statute has been suggested to generally apply if, and only if:
(1) a partial taking occurs;
(2) the condemnor is a state or local “public body”;
(3) the land is taken to construct or expand a right-of-way;
(4) the taking damages or destroys an established business, which has existed on the parent tract[18] for the specified number of years;
(5) the business owner owns the condemned and adjoining land (lessees may qualify);
(6) business was conducted on the condemned land and the adjoining remainder; and
(7) the eondemnee specifically pleads and proves (l)-(6).
See § 73.071(3)(b), Fla. Stat. (2004); Carlos A. Kelly, Eminent Domain: Identifying Issues in Damages for the General Practitioner; Fla. B.J., May 2009, at 52. The statute is thus limited in scope and completely exempts the award of business damages in total-taking cases. In fact, the Legislature formerly permitted FDOT to totally condemn a parcel to avoid the imposition of business damages if the total tak *979 ing (as opposed to a partial taking) resulted in a lower bottom line. See Dep’t of Transp. v. Fortune Fed. Sav. & Loan Ass’n, 532 So.2d 1267, 1270 (Fla.1988) (upholding the constitutionality of section 337.27(3), Florida Statutes (1985)). In 1999, the Legislature rescinded this authority, thereby prohibiting this type of total taking, which had become known as “Fortune Federal takings.” See ch. 99-385, § 64, at 3882, Laws of Fla.; Fla. H.R. Comm. on Transp., HB 591 (1999) Staff Analysis 2, 18, 24, 28 (final July 16, 1999) (on file with State Archives); Paul D. Bain, 1999 Amendments to Florida's Eminent Domain Statutes, Fla. B.J., Nov. 1999, at 68, 70.
Notwithstanding the narrow nature of the business-damages statute, Florida precedent maintains:
The purpose of section 73.071(3)(b) is to mitigate the hardship that may result when the state exercises the power of eminent domain paying only the constitutionally required full compensation for the property actually taken. The legislature in doing so has recognized that a business location may be an asset of considerable value....
K.E. Morris, 444 So.2d at 929. However, section 73.071(3)(b) does not compensate land owners for business damages when (i) a total taking occurs, (ii) the condemnor is not a “public body” (the Legislature has vested some private parties, e.g., utilities, with eminent-domain powers), or (iii) the land is taken for some purpose other than building or expanding a right-of-way. Cf. Fortune Fed., 532 So.2d at 1270 (“[T]he legislature has created a right to business damages, so it may also limit that right.”).
The Legislature has not specifically defined what may constitute compensable “business damages.” However, this Court has held:
[S]ection 73.071(3)(b) ... does not require the calculation of business damages by one mechanically applied, one-size-fits-all formula which would not produce proper results. For an ongoing business, ... business damages are inherently fact-intensive. ... Ultimately, it is for the fact-finder to calculate the damages.
Murray v. Dep’t of Transp., 687 So.2d 825, 827 (Fla.1997) (emphasis supplied). Further, the Fourth District, in a widely cited opinion, explained:
The Legislature did not define or otherwise elaborate upon what constitutes “business damages,” but there is absolutely no indication that it intended this statute to be construed as allowing business damages for lost profits only. The statutory language, which authorizes compensation for “the probable damages to such business which the denial of the use of the property so taken may reasonably cause,” simply does not warrant this restrictive interpretation.
Matthews v. Div. of Admin., 324 So.2d 664, 666 (Fla. 4th DCA 1975). In a similar vein, the Third District has stated:
Where less than the entire property is sought to be appropriated, any reasonable damages to an established business located on adjoining land not appropriated are compensable by statute providing: (1) the business is owned by the party whose land is being taken, and (2) the business has been on the adjoining property for more than [the requisite number of] years.
Div. of Admin, v. Ely, 351 So.2d 66, 69 (Fla. 3d DCA 1977) (emphasis supplied) (citing State Road Dep’t v. Bramlett, 189 So.2d 481 (Fla.1966); § 73.071(3)(b), Fla. Stat. (1975)).
Case law has specifically identified at least three types of business damages — (1) lost profits, (2) moving/relocation *980 expenses, and (3) loss of goodwill[19] — but section 73.071(3)(b)’s plain text is not so limited. Rather, it simply states that the land/business owner is entitled to receive “the -probable damages to such business which the denial of the use of the property so taken may reasonably cause.” § 73.071(3)(b), Fla. Stat. (2004) (emphasis supplied). Each party is thus entitled to approach the “inherently fact-intensive” task of business-damage valuation by presenting the opinions of qualified experts “based upon generally accepted accounting principles as to what should be included in the jury’s calculation.” Murray, 687 So.2d at 827 (emphasis supplied). Expert valuation testimony must be consistent with the law and “is impermissible if based merely on speculation or groundless prognostication, but can be admitted where necessary to explain previously admitted factual evidence tending to prove or disprove the existence of a reasonable probability.” Broward County v. Patel, 641 So.2d 40, 43 (Fla.1994); see M.J. Stavola Farms, Inc. v. Dep’t of Transp, 742 So.2d 391, 395 (Fla. 5th DCA 1999) (holding that an expert’s opinion which is unsupported by the evidence or law, or is misleading because it employs an improper methodology, is properly excluded). Business damages determined by the fact-finder must fall within the range of expert valuations presented by the parties. See Patel, 641 So.2d at 43 n. 5. A business-damages award based on the total cost and damages associated with relocation may not exceed the total value of the business as measured by the appropriate valuation method — -whether an income-based approach (i.e., value based on current and future revenue stream discounted to a total present value), market-based approach (i.e., value based on comparison to comparable businesses existing in the particular market adjusted for the individual characteristics and risks associated with the specific business), or asset-based approach (i.e., value based on total assets net liabilities; typically used when the business is not profitable). See § 73.071(3)(b), Fla. Stat. (2004); Jeffrey M. Risius, Business Valuation: A Printer For The Legal Professional chs. 8, 10, 12 (2007); American Society of Appraisers, Business Valuation Standards Glossary, available at www.bvappraisers.org/ glossary/glossary.pdf.
System Components’ Business Damages
Before trial, the parties stipulated that System Components satisfied each statutory requirement for business damages. Their remaining dispute centered on the significance of the statutory command that the land/business owner receive “the probable damages to such business which the denial of the use. of the property so taken may reasonably cause.” § 73.071(3)(b), Fla. Stat. (2004) (emphasis supplied). System Components correctly highlights that section 73.071(2), Florida Statutes (2004), states:
The amount of such compensation shall be determined as of the date of trial, or the date upon which, title passes, whichever shall occur first.
(Emphasis supplied.) Based on this subsection, System Components contends that its business-damages compensation should be determined as of the date of the taking, July 22, 2004, which occurred prior to trial, and further contends that all of its subsequent relocation efforts should not impact the result-that the taking completely destroyed the business at its prior location.
Unfortunately, this contention ignores several important facts and a significant point of law. First, System Components continued in business at its prior *981 location post-taking with FDOT’s assent. System Components (a) leased back the condemned parcel for a five-month term ending in December 2004, (b) later transferred to a temporary facility, and (c) finally moved to its new, permanent location on December 23, 2005, approximately 1.5 months before the business-damages, trial occurred diming mid-February 2006. Second, with regard to the ignored point of law, Florida’s appellate courts have not mechanically applied the timing requirement of section 73.071(2) when addressing business damages. For example, in Malone v. Division of Administration, 438 So.2d 857 (Fla. 3d DCA 1983), a case involving an established type of business damages (i.e., moving expenses), the Third District recognized — consistent with this Court’s precedent — that “Florida law requires ... courts [to] take into account all facts and circumstances bearing a reasonable relationship to the loss occasioned an owner by virtue of his property being taken,” id. at 863, and held that “[t]he [business-damages] award should be based on the allowable costs incurred or that will be incurred as long as the move is undertaken seasonably.” Id. at 861 (emphasis supplied). Hence, the Third District refused to strictly adhere to section 73.071(2) when doing so would have produced an absurd result. Cf. K.E. Morriss, 444 So.2d at 929 (“[I]t is axiomatic that courts should ... avoid giving [a statute] an interpretation that will lead to an absurd result.”). Instead, the district court permitted a valuation of business damages based on the actual damages suffered by the condemnee following the taking — which were later established at trial. The court did so because the condemnee had relocated.[20]
A similar situation exists here. System Components relocated and never ceased operations. Therefore, the jury calculated these business damages with reference to the “probable” damages “reasonably” suffered as a result of “the denial of the use of the property so taken.” § 73.071(3)(b), Fla. Stat. (2004). Based upon the record, System Components received nothing more and nothing less. As both the Fourth and Fifth Districts have held, business damages “are not intended to be a windfall unconnected with any out-of-pocket loss.” Sys. Components, 985 So.2d at 690 (citing Tire Centers, 895 So.2d at 1112). In this case, the jury awarded System Components business damages for (a) loss of value due to an altered capital structure (i.e., increased debt), (b) moving expenses and rent, (c) costs associated with obtaining a replacement property, (d) costs associated with constructing a replacement facility, and (e) down-time productivity losses, and the trial court subsequently deducted the amount of FDOT’s good-faith deposit to avoid double recovery. System Components did not lose any goodwill and its witnesses could not identify any specific loss of sales. The company did not cease to exist on the date of taking. Consequently, System Components received the “probable” business damages “reasonably” suffered as a result of the taking. § 73.071(3)(b), Fla. Stat. (2004).
*982 As we will more fully explain, the decision of the Fourth District in Tire Centers, which awarded the total value of the affected business — rather than awarding actual business damages — was based upon an understandable misconception of Florida law.
The Doctrine of Avoidable Consequences Does Not Require Courts to Ignore the Actual Business Damages Caused by a Taking in Light of Business Relocation
The doctrine of avoidable consequences, which is also somewhat inaccurately identified as the “duty to mitigate” damages, commonly applies in contract and tort actions. See generally 17 Fla. Jur.2d, Damages, §§ 103-04 (2004). There is no actual “duty to mitigate,” because the injui’ed party is not compelled to undertake any ameliorative efforts. The doctrine simply “prevents a party from recovering those damages inflicted by a wrongdoer that the injured party could have reasonably avoided.” The Florida Bar, Florida Civil Practice Damages § 2.43, at 2-30 (6th ed.2005) (emphasis supplied) (citing Sharick v. SE. Univ. of Health Scis., Inc., 780 So.2d 136 (Fla. 3d DCA 2000); Graphic Assocs., Inc. v. Riviana Rest. Corp., 461 So.2d 1011 (Fla. 4th DCA 1984)). The doctrine does not permit damage reduction based on what “could have been avoided” through Herculean efforts. See, e.g., Thompson v. Fla. Drum Co., 651 So.2d 180, 182 (Fla. 1st DCA 1995) (“Extraordinary efforts on the part of a plaintiff to mitigate are not required.”), approved, 668 So.2d 192 (Fla.1996). Rather, the injured party is only accountable for those hypothetical ameliorative actions that could have been accomplished through “ordinary and reasonable care,” without requiring undue effort or expense. Graphic Assocs., 461 So.2d at 1014 (the doctrine “prevents a party from recovering those damages inflicted by a wrongdoer which the injured party ‘could have avoided without undue risk, burden, or humiliation.’ ” (emphasis supplied) (quoting Restatement (Second) of Contracts § 305(1) (1979))); Royal Trust Bank of Orlando v. All Fla. Fleets, Inc., 431 So.2d 1043, 1045 (Fla. 5th DCA 1983) (substantially similar).
In Florida eminent-domain cases, severance damages are subject to the doctrine of avoidable consequences through a valuation concept known as the “cost to cure”:
[T]he “cost to cure” is the cost of an attempt to ameliorate the damage to value sustained by the [remaining] property as a result of the partial taking by the government. The theory is that it is more economical to spend additional money on a “cure” to restore value to the remaining property because the “cure” will restore more lost value than its “cost.”
Fla. Dep’t of Transp. v. Armadillo Partners, Inc., 849 So.2d 279, 285 (Fla.2003). The plain text of section 73.071(3)(b), Florida Statutes (2004), conveys that the Legislature views business damages as an otherwise noncompensable[21] subtype of severance damages:
Where less than the entire property is sought to be appropriated, any damages to the remainder [i.e., severance damages] caused by the taking, including, ... the probable damages to such business which the denial of the use of the property so taken may reasonably cause....
*983 (Emphasis supplied.) See also Pro-Art Dental Lab, Inc. v. V-Strategic Group, LLC, 986 So.2d 1244, 1257 (Fla.2008) (“[T]he term ‘including’ is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.” (emphasis omitted) (quoting Fed. Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 100, 62 S.Ct. 1, 86 L.Ed. 65 (1941))). Therefore, the doctrine of avoidable consequences/cost-to-cure approach may similarly apply to business damages when, limited to a proposed, reasonably feasible restoration of the business on the parent tract. See Mulkey, 448 So.2d at 1066-67 (holding that the doctrine of avoidable consequences/cost-to-cure approach is limited to the parent tract).[22] However, this recognition does not alter the fact that true severance damages are a constitutionally required component of “full compensation,” whereas business damages are not. See Florida Eminent Domain, supra, §§ 9.34, 9.35, at 9-46 — 9-47. In addition, as stated above, severance and business damages fulfill substantively distinct roles: Severance damages reimburse the owner for the reduction in value the taking causes to any remaining land, while business damages compensate the owner for probable reductions in business value, business losses, or increased business expenses reasonably caused by the taking. See § 73.071(3)(b), Fla. Stat. (2004); Sys. Components, 985 So.2d at 690-91 (citing Blockbuster, 714 So.2d at 1224); Ness Trailer, 489 So.2d at 1181; Florida Eminent Domain, supra, §§ 9.34, 9.35, at 9-46 — 9-47.
In Tire Centers, the Fourth District erroneously (but understandably) relied on Florida’s historical limitation of the “cost to cure” to the parent tract and overlooked the actual damages suffered by the condemnee. Instead, the Fourth District awarded the total value of the con-demnee’s business ($1,738,235) as though it had ceased to exist on the date of taking. See 895 So.2d at 1112-13. In reality, the tire business simply relocated within the same general vicinity and continued its business unabated (much the same as System Components in the case at bar). See id. at 1111. Tire Centers thus misstates and misapplies the doctrine of avoidable consequences, which involves hypothetical ameliorative efforts.[23] It is true that Florida precedent limits the cost to cure to the parent tract. See Midkey, 448 So.2d at *984 1066-67.[24] Nevertheless, it is equally true that the cost-to-cure approach is not an independent measure of damages; it is simply a means through which the con-demnee’s damages may be reduced by pleading and proving reasonably implemented, hypothetical ameliorative efforts that are limited to the parent tract. See Armadillo Partners, 849 So.2d at 285 (“[Wjhile the cost to cure may be relevant evidence on the issue of damages, it is not a measure of damages to be separately assessed without reference to” other germane evidence concerning the actual damages suffered by the condemnee.).
In contrast, the relocation efforts of Tire Centers and System Components were not hypothetical but, rather, were probative of the actual damages sustained by these businesses in light of their relocation and continued operation. Cf. Malone, 438 So.2d at 860-63 (permitting valuation based on actual business damages suffered post-taking); Mulkey, 448 So.2d at 1067 (same). To ignore planned, executed business relocations in interpreting section 73.071 (3)(b) would lead to an absurd result (i.e., overcompensating businesses as though they ceased to exist on the date of taking), which this Court must seek to avoid. Cf. K.E. Morris, 444 So.2d at 929. The Legislature has authorized the award of “probable damages ... which the denial of the use of the property so taken may reasonably cause,”[25] and we must properly construe the statute and only award compensation when clearly consistent with legislative intent. See K.E. Morris, 444 So.2d at 929.
Section 73.071(3)(b) is thus intended to compensate “probable” business damages in light of actual events. However, the statute is completely silent with regard to imposing an affirmative duty to relocate, which FDOT contends should be the rule despite the absence of any explicit statutory command. In other words, if the destroyed business chooses not to relocate and, instead, to close up shop, FDOT requests the ability to reduce the business’s damages through the doctrine of avoidable consequences (i.e., introducing relocation hypotheticals beyond the boundaries of the parent tract to reduce business damages). While such a rule might provide an economic incentive to force the reestablishment of businesses following condemnation, imposing an affirmative duty to relocate is a legislative, rather than judicial, function. This is particularly true given that Florida eminent-domain precedent has limited the doctrine of avoidable consequences to the parent trad,[26] and the Legislature has been operating under this assumption for a number of years, during which time it has amended Florida’s eminent-domain statutes without imposing an affirmative duty to relocate. See, e.g., Essex Ins. Co. v. Zota, 985 So.2d 1036, 1043 (Fla.2008) (“[Tjhe legislature is presumed to know the judicial constructions of a law when enacting a new version of that law and ... is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed in the new version.” (internal quotation marks omitted) (quoting Jones v. ETS of New Or *985 leans, Inc., 793 So.2d 912, 917 (Fla.2001))); see generally ch. 99-385, Laws of Fla. (making several changes to Florida’s eminent-domain statutes). If the Legislature wishes to impose this type of affirmative duty, it remains free to do so. Cf Idaho Code Ann. § 7-711 (2)(b) (Supp.2007) (imposing an affirmative duty to relocate under reasonable circumstances).
This case does not involve a hypothetical relocation, and both the Fourth and Fifth Districts have recognized that section 73.071(3)(b) does not directly impose an affirmative or hypothetical duty to relocate. See Sys. Components, 985 So.2d at 692; Tire Centers, 895 So.2d at 1112-13. Accordingly, we defer to the Legislature concerning the question of whether affected businesses should be required to relocate to mitigate their business damages while, at the same time, we recognize that under the applicable statute no such requirement exists.
CONCLUSION
For the reasons provided in our analysis, we approve the decision of the Fifth District Court of Appeal in System Components Corp. v. Department of Transportation, 985 So.2d 687 (Fla. 5th DCA 2008), and disapprove the decision of the Fourth District in State Department of Transportation v. Tire Centers, LLC, 895 So.2d 1110 (Fla. 4th DCA 2005). In resolving this conflict, we conclude that when a qualified partial taking destroys a business at its prior location, and the land/business owner chooses to relocate, the resulting business damages must be measured by the probable financial impact reasonably suffered as a result of the taking. Therefore, these business damages must be determined in light of the true economic realities of the given case, which, here, involved a relocated business’s continued existence at its new location.
It is so ordered.
QUINCE, C.J., and PARIENTE, POLSTON, and LABÁRGA, JJ., concur.
CANADY, J., concurs in result only.
PERRY, J., did not participate.

. See also Black's Law Dictionary 1418 (8th ed.2004) ("sine qua non. An indispensable condition or thing; something on which something else necessarily depends.”).

. See also Frank Gahan, The Law of Damages 1 (1936) ("Damages are the sum of money which a person wronged is entitled to receive from the wrongdoer as compensation for the wrong." (emphasis supplied)); Black’s Law Dictionary 416 (8th ed.2004) factual damages. An amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." (emphasis supplied)).

. See Black's Law Dictionary 419 (8th ed.2004) {‘‘severance damages. In a condemnation case, damages awarded to a property owner for diminution in the fair market value of land as a result of severance from the land of the property actually condemned; compensation awarded to a landowner for the loss in value of the tract that remains after a partial taking of the land.'').

. We agree with the Fifth District that FDOT's contentions in this regard were totally improper. See Sys. Components, 985 So.2d at 689 n. 3. In the absence of inter-district conflict or contrary precedent from this Court, it is absolutely clear that the decision of a district court of appeal is binding precedent throughout Florida. See, e.g., Pardo v. State, 596 So.2d 665, 666 (Fla.1992). Consequently, a trial court may not overrule or recede from the controlling decision of a district court.

. See American Society of Appraisers, Business Valuation Standards Glossary, available at www.bvappraisers.org',glossary/glossary. pdf (“[A] general way of determining a value indication of a business ... using one or more methods that convert anticipated economic benefits into a present single amount.”); Jeffrey M. Risius, Business Valuation: A Primer For The Legal Professional 65 (2007) ("The general theory behind the Income Approach is that the value of the business is equal to the present value of the cash flows expected to be generated by that business in the future into perpetuity.”).

. The record reflects that this latter amount included damages for (a) loss of value due to altered capital structure (i.e., increased debt); (b) moving expenses and rent; (c) costs associated with obtaining a replacement property; (d) costs associated with constructing a replacement facility; and (e) down-time productivity losses.

. See, e.g., E.A.R. v. State, 4 So.3d 614, 629 (Fla.2009) (“To discern [legislative] intent, the Court looks 'primarily' to the plain text of the relevant statute ....” (citing Borden v. East-European Ins. Co., 921 So.2d 587, 595 (Fla.2006))).

. Fla. Dep't of Transp. v. Armadillo Partners, Inc., 849 So.2d 279, 282 (Fla.2003) (quoting Broward County v. Patel, 641 So.2d 40, 42 (Fla.1994)).

. U.S. Const, amend. V (''[N]or shall private property be taken for public use, without just compensation." (emphasis supplied)).

. Art. X, § 6(a), Fla. Const. ("No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner.” (emphasis supplied)).

. The concept of "highest and best use” applies to the valuation of condemned land and severance damages:
An owner of lands sought to be condemned is entitled to their "market value fairly determined.” United States v. Miller, 317 U.S. 369[, 63 S.Ct. 276, 87 L.Ed. 336], That value may reflect not only the use to which the property is presently devoted but also that use to which it may be readily converted. [Mississippi & Rum River] Boom Co. v. Patterson, 98 U.S. 403[, 25 L.Ed. 206 (1878)]; McCandless v. United States, 298 U.S. 342[, 56 S.Ct. 764, 80 L.Ed. 1205]. In that connection the value may be determined in light of the special or higher use of the land....
United States ex rel. TVA v. Powelson, 319 U.S. 266, 275[, 63 S.Ct. 1047, 87 L.Ed. 1390] (1943); see also Black’s Law Dictionary 1577 (8th ed. 2004) ("In valuing property, the use that will generate the most profit. This standard is used especially] to determine the fair market value of property subject to eminent domain.”).

.See supra note 3.

. See The Florida Bar, Florida Eminent Domain Practice and Procedure § 9.46, at 9-61, 9-62 (7th ed.2008).

. “Business damages ... are not compensa-ble where .. . there is a total taking of real property, as opposed to a partial taking." Metro. Dade County v. Curelli, Douglas, McClaskey & Collins, 511 So.2d 602, 603 (Fla. 3d DCA 1987).

. “[T]he legislative intent is to allow business damages only to concerns having a physical existence for more than [tire requisite number of] years at the location where the partial taking is alleged to have caused business damages.” K.E. Monis, 444 So.2d at 928. Transfers in ownership of an operating business do not restart the clock. See, e.g., Hicks v. Fla. Dep’t of Transp., 541 So.2d 1309, 1310 (Fla. 4th DCA 1989).

. The statute “has long been interpreted to include the business damage claim of a lessee, and not merely that of a fee owner." Blockbuster Video, Inc. v. State Dep’t of Transp., 714 So.2d 1222, 1224 (Fla. 2d DCA 1998) (emphasis supplied) (citing State Road Dep’t v. White, 161 So.2d 828 (Fla.1964), approving, 148 So.2d 32 (Fla. 2d DCA 1962)).

. The owner must have conducted business on the condemned land and the adjoining, remaining land. See, e.g., Gateway Growers, *978 Inc. v. Sch. Bd. of Palm Beach County, 924 So.2d 875, 877-78 (Fla. 4th DCA 2006).

. “Parent tract” refers to “the single tract of land that incorporates both the condemned land and the owner's remainder portion at the time of the taking.” Blockbuster, 714 So.2d at 1224.

. See Sys. Components, 985 So.2d at 690.

. Despite our general agreement with the analysis presented in Malone, we disagree with portions of the Third District’s decision. First, the Malone court treated moving 'expenses as a component of the "full compensation” required under article X, section 6 of the Florida Constitution. See 438 So.2d at 859-61. Subsequent precedent has clarified that this conclusion was incorrect-business damages are a creature of statute. See, e.g., Texaco, Inc. v. Dep’t of Transp., 537 So.2d 92, 93-94 (Fla.1989). Second, we disagree with the Malone court's conclusion that (1) fees charged by real-estate agents to determine a suitable relocation site and (2) damages caused by business "down time” are each noncompensable. See 438 So.2d at 863-64.

. In other words, noncompensable in the absence of a statute providing for such damages.

. Restoration of the business on the parent tract was impossible in this case. Due to the partial taking, System Components was forced to either (1) close up shop, or, alternatively, (2) relocate off-site to real property over which it previously had no ownership interest.

. However, we do agree with the Fourth District that goodwill is often uniquely associated with a particular site (especially a retail storefront), and that such a location may provide much of a business's intrinsic, intangible value. See Matthews, 324 So.2d at 667 ("[Cjommon experience teaches us that where the 'effect of the taking' is to totally destroy an established neighborhood-retail business, there is, or at least well may be, a substantial loss ... of customer goodwill.”); see also Black's Law Dictionary 715 (8th ed.2004) {"goodwill. A business’s reputation, patronage, and other intangible assets that are considered when appraising tire business, especially] for purchase; the ability to earn income in excess of the income that would be expected from the business viewed as a mere collection of assets.”); American Society of Appraisers, Business Valuation Standards Glossary, available at www.bvappraisers.org/ glossary/glossary.pdf ("Goodwill — that intangible asset arising as a result of name, reputation, customer loyalty, location, products, and similar factors not separately identified.”). Here, due to the nature of its wholesale-distribution business, System Components could not establish that it lost any goodwill following its relocation.

.The Florida Eminent Domain Practice and Procedure treatise explains this rule as follows:
Evidence of a cure to the remainder must show that the cure can be constructed on the premises. A cure cannot be admitted if it would require an owner to go outside the premises, to property over which the owner has no ownership interest, to effect the cure.
Id. § 9.42, at 9-55 (citing Mullcey, 448 So.2d 1062); see also Kelly, supra, at 54 (discussing Mulkey).

. § 73.071 (3)(b), Fla. Slat. (2004).

. See Mullcey, 448 So.2d at 1066-67.