IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

August 5, 2015

STATE OF FLORIDA,                    )
                                     )
            Petitioner,              )
                                     )
v.                                   )            Case No. 2D14-382
                                     )
EARNEST CHARLES MORGAN, JR.,         )
                                     )
            Respondent.              )
_____       )

BY ORDER OF THE COURT:

　　　　　Upon this court's own motion, the opinion dated April 29, 2015, is

withdrawn and the following revised opinion is substituted therefore.

I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.

JAMES R. BIRKHOLD, CLERK

cc:    Charles A. Greene, Jr., Esq. (AA)
       Darrell D. Dirks, Esq. (AE)
       Earnest Charles Morgan, Jr.

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                    )
                                     )
        Petitioner,                  )
                                     )
v.                                   )          Case No. 2D14-382
                                     )
EARNEST CHARLES MORGAN, JR.,         )
                                     )
        Respondent.                  )
_____)

Opinion filed August 5, 2015.

Petition for Writ of Certiorari to the
Circuit Court for Hillsborough County;
William Fuente, Judge.

Mark A. Ober, State Attorney, and
Darrell D. Dirks, Assistant State
Attorney, Tampa, for Petitioner.

Charles A. Greene, Jr. of Law Offices
of Charles A. Greene, Jr., PA, Tampa,
for Respondent.


WALLACE, Judge.

        The State petitions for a writ of certiorari quashing the trial court's order

excluding certain audio recordings from admission into evidence at the trial of the

defendant, Earnest Charles Morgan, Jr.  We grant the petition and quash the order to

the extent that it prohibits the State from offering into evidence the recorded audio conversations between Mr. Morgan and Maurice Walton.

## I. THE FACTS AND THE PROCEDURAL HISTORY

The underlying proceeding in the trial court involves a pending re-trial of Mr. Morgan in circuit court case number 05-CF-21005 for one count of violating the Florida Racketeer Influenced and Corrupt Organizations (RICO) Act and one count of conspiracy to violate the Florida RICO Act. In his first trial, Mr. Morgan was convicted of both of these offenses. This court reversed both convictions because the absence of a sufficient transcript in the record concerning the substance of the audio recordings upon which the State relied to prove its case made it impossible for this court to determine the sufficiency of the evidence to sustain the convictions. Morgan v. State, 117 So. 3d 79 (Fla. 2d DCA 2013).

On remand, Mr. Morgan filed a motion in limine seeking to exclude certain recordings of telephone conversations from evidence at trial on the grounds that they were inaudible. In considering the motion, the trial judge played in open court and listened to a tempo-edited CD of the recorded telephone calls that the State intended to offer at trial. A court reporter was present, "allowing the court reporter to attempt to hear, record, and transcribe the voices, and to prepare a transcript, which the Court could review and independently assess whether inaudible portions would substantially deprive the audible portions of relevance."

Following this procedure, the trial court made the following findings with regard to the motion seeking the exclusion of the recorded calls from evidence:

> The Court has listened to the recorded calls in open
> court and has obtained and reviewed the court reporter's

transcript of those calls a copy of which is attached. The State after the CD was played in Court represented that additional witnesses will testify as to the substance of the calls, including Demarte Epps, a party to 3 conversations with Morgan, and law enforcement officers who will testify as to the identity of the speakers. Eleven (11) conversations are between Morgan and Walton (deceased), and are in the Courts assessment, largely unintelligible, to the extent that the unintelligible portions defeat any relevance to the intelligible portions.

The Court will grant the motion to the extent of prohibiting introduction of recorded conversations between Morgan and Walton, and will deny the motion as it relates to any conversations between Morgan and Epps, who purportedly would testify as to the substance of the conversations he had with Morgan, a party opponent.

Based on these findings, the trial court granted Mr. Morgan's motion in limine "in part to the extent that the State may not offer evidence of recorded conversations between him and Walton due to the largely inaudible portions."

The State filed a notice of appeal with regard to the order under review. After this court issued an order to show cause why the case should not be dismissed, the State responded asking this court to treat the matter as a petition for a writ of certiorari. This court subsequently issued an order converting the case to a petition for certiorari.

## II. THE STANDARD OF REVIEW

As the State recognizes, the order under review is not one of the orders listed in Florida Rule of Appellate Procedure 9.140(c)(1) from which it may take a nonfinal appeal.

If a nonfinal order does not involve one of the subjects enumerated in Florida Rule of Appellate Procedure 9.140(c)(1), the state would not be able to correct an erroneous and highly prejudicial ruling. Under such

- 3 -

circumstances, the state could only proceed to trial with its ability to present the case significantly impaired. Should the defendant be acquitted, the principles of double jeopardy prevent the state from seeking review; thus, the prejudice resulting from the earlier order would be irreparable.

State v. Pettis, 520 So. 2d 250, 253 (Fla. 1988). Under these circumstances, the Florida Supreme Court has recognized that a petition for certiorari is "an apt remedy" for those orders that adversely affect the State's ability to prosecute. Id.; State v. Storer, 920 So. 2d 754, 758 (Fla. 2d DCA 2006). However, the relief available to the State by certiorari is limited. "While some pretrial evidentiary rulings may qualify for certiorari, it must be remembered that the extraordinary writ is reserved for those situations where 'there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.' " Pettis, 520 So. 2d at 254 (quoting Combs v. State, 426 So. 2d 93, 96 (Fla. 1983)). "Only those [petitions for certiorari] are granted in which the error is serious." Id. at 253. Where the trial court's order does not substantially impair the State's ability to bring its case, relief by certiorari is not available, and the petition should be dismissed. State v. Sealy-Doe, 861 So. 2d 530, 531 (Fla. 4th DCA 2003).

## III.  THE AVAILABILITY OF RELIEF BY CERTIORARI

The record indicates that the exclusion from evidence of the audio recordings in question will hamstring, if not destroy, the State's case. If the audio recordings are not admitted into evidence, the State will have to rely for its proof on the transcribed deposition of a codefendant who was murdered eight days after giving his deposition to Mr. Morgan's attorney. The trial court has ruled that this deposition is admissible in evidence and that it may be read into the record at Mr. Morgan's second trial. However, absent the audio recordings, the deposition testimony of the

- 4 -

codefendant will be substantially uncorroborated. Under these circumstances, we conclude that this is a case where certiorari review is "an apt remedy." Pettis, 520 So. 2d at 253; see also State v. Rolack, 104 So. 3d 1286 (Fla. 5th DCA 2013) (holding that review by certiorari was available to remedy a trial court order that improperly struck two of the State's witnesses as a sanction for the State's failure to disclose the address of one of the witnesses in discovery).

## IV. DISCUSSION

Partially inaudible or unintelligible audio recordings are not per se inadmissible. Instead, the admissibility of a partially inaudible or unintelligible audio recording is "guided by the principle that an audio[ recording] should be admitted into evidence unless the condition of the recording degrades its usefulness to such an extent that it makes the evidence misleading or irrelevant." Jackson v. State, 979 So. 2d 1153, 1155 (Fla. 5th DCA 2008) (citing McCoy v. State, 853 So. 2d 396 (Fla. 2003), and Odom v. State, 403 So. 2d 936 (Fla. 1981)).

Here, the trial court's rationale for excluding the audio recordings was that the recordings "are in the Court's assessment, largely unintelligible, to the extent that the unintelligible portions defeat any relevance to the intelligible portions." The trial court excluded just the audio recordings where the only participants were Mr. Morgan and Mr. Walton, who is now deceased. The trial court refused to exclude evidence of conversations between Mr. Morgan and Demarte Epps, a codefendant, because Mr. Epps "would testify as to the substance of the conversations he had with Morgan."

We have listened to the audiotapes and do not find that they are as deficient as the trial court found that they were. It is possible to follow much of what is

being said, including references to amounts of substances being ordered and where they are to be delivered.  Obviously, the participants are speaking in slang and using code terms.  At trial, we anticipate that the State would offer evidence to explain to the jury the meaning of certain slang and code terms as used by the participants in the recordings.  Such explanatory evidence would be admissible:

> In Brooks v. State, 762 So. 2d 879, 891-92 (Fla. 2000), we held that a trial court did not abuse its discretion by permitting an experienced dealer of crack cocaine to testify as an expert regarding the identity and approximate weight of the rocky substances in a bag.  Furthermore, police officers have testified as expert witnesses regarding the street language in the drug culture and explained to the jury their interpretation of the words used, which occurred in context in which their normal lexicographical meanings would be illogical and meaningless.

Smith v. State, 7 So. 3d 473, 497 (Fla. 2008).  In this case, at least one codefendant, Mr. Epps, was a party to three of the conversations.  He and law enforcement officers would very likely be available to explain slang terminology and to testify concerning the meaning of the coded language used by the participants to the recorded conversations.

The trial court's order departs from the essential requirements of the law in that it considers the admissibility of the recordings isolated from the dynamics of the pending trial and the complete context in which the State would offer the recordings into evidence.  At trial, the recordings could be played for the jury accompanied by the testimony of codefendants and law enforcement officers who might explain to the jury the meaning of what was said on the recordings.  Hearing the tapes played at speed and hearing them only once, any court reporter would probably experience difficulty in producing an accurate transcript of every word that was said.  But the same might also

be true for the comic banter of "Who's on First?"[1] or for the Elizabethan English heard in the plays of William Shakespeare. Despite the possible inability of a court reporter to produce a verbatim transcript of such dialogue on the first hearing, we can still understand and enjoy such productions. Finally, a transcription of the recorded conversations prepared by law enforcement officers would be available as a demonstrative aid, if not as an exhibit to be received in evidence. See Martinez v. State, 761 So. 2d 1074, 1083-87 (Fla. 2000).

The trial court's order also departs from the principle of law that "an audio[ recording] should be admitted into evidence unless the condition of the recording degrades its usefulness to such an extent that it makes the evidence misleading or irrelevant." Jackson, 979 So. 2d at 1155. The recordings in question—listened to in context and with the assistance of testimony to explain the meaning of slang and coded language—are not degraded to the point of rendering them misleading or irrelevant.

## V. CONCLUSION

For the foregoing reasons, we grant the petition and quash the trial court's order to the extent that it rules that the State may not offer into evidence at Mr. Morgan's trial the audio recordings between Mr. Morgan and Mr. Walton.

Petition granted; order quashed in part.


CASANUEVA and KHOUZAM, JJ., Concur.

---

[1]"Who's on First?" is a famous comedy routine performed by the American comedians, William "Bud" Abbott and Lou Costello.