DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

STATE OF FLORIDA,

Petitioner,

v.

McKINSIE LYONS,

Respondent.

No. 2D2023-2358

_____

August 9, 2024

Petition for Writ of Certiorari to the Circuit Court for Hillsborough
County; Lyann Goudie, Judge.

Ashley Moody, Attorney General, Tallahassee, and Doris Meacham,
Senior Assistant Attorney General, Daytona Beach, for Petitioner.

Daniel M. Hernandez of Daniel M. Hernandez, P.A., Tampa, for
Respondent.

BLACK, Judge.

The State seeks certiorari review of the trial court's order granting
McKinsie Lyons' motion to preclude application of section 921.141(2),
Florida Statutes (2023), in this case. We grant the petition.

As relevant to the State's petition, Lyons was charged with two
counts of capital felony murder in September 2018. Two months later

the State filed its notice of intent to seek the death penalty. In July 2023, following enactment of amendments to section 921.141, Lyons filed a motion seeking to prevent application of the 2023 version of section 921.141(2) to his case. Specifically, Lyons sought to preclude application of section 921.141(2)(c), which became effective in April 2023 and requires the jury to recommend a sentence of death if eight or more jurors determine that death is the appropriate sentence. *See* ch. 2023-23, § 1, Laws of Fla.[1] The prior version of the statute, and the one that Lyons sought to have applied, required the jury to unanimously determine that death was the appropriate sentence before recommending a death sentence. *See* § 921.141(2), Fla. Stat. (2022); ch. 2017-1, § 1, Laws of Fla. On September 29, 2023, following a hearing, the trial court granted Lyons' motion. The court found that "retroactive application of the current version of section 921.141 to the instant case violates the Ex Post Facto Clauses of the United States and Florida Constitutions," and the court adopted the reasoning and analysis of a Tenth Judicial Circuit Court's order addressing the same issue.[2] In a footnote in its order, the court acknowledged the September 22, 2023, opinion of the Fifth District Court of Appeal in *State v. Victorino* (*Victorino II*), 372 So. 3d 772 (Fla. 5th DCA 2023), quashing a trial court order and concluding that the 2023

---

[1] In addition to removing the unanimity requirement for a death sentence recommendation, the 2023 amendment also added a sentence to subsection (3) of the statute, reiterating that the jury must unanimously find at least one aggravating factor in order for the defendant to be eligible for a sentence of death. Ch. 2023-23, § 1, Laws of Fla.; *see also* § 921.141(3), Fla. Stat. (2023). The unanimity requirement for aggravating factors is not at issue in this case.

[2] That order has since been quashed. *State v. Lobato*, No. 6D2023-3201, 2024 WL 2789409 (Fla. 6th DCA May 31, 2024).

2

amendment to section 921.141(2) is procedural and not an ex post facto law.  However, the trial court determined that because the *Victorino II* decision was not then final, it was not binding on the trial court.

The effect of the order at issue is that the jury would be instructed that its "decision regarding the appropriate sentence must be unanimous if death is to be imposed."  *See* Fla. Std. Jury Instr. (Crim.) 7.11 (2023). The State timely seeks certiorari review of this pretrial ruling.

For a district court of appeal to grant a certiorari petition, the "petitioner must establish that an order of the lower tribunal (1) departed from the essential requirements of law, (2) causing a material injury that (3) is unable to be remedied via appeal."  *State v. Davis*, 147 So. 3d 7, 9 (Fla. 1st DCA 2013).  "Courts consider in tandem whether the contested order would cause the petitioner material injury and whether the petitioner has an adequate remedy on appeal, referring to the combined question as whether the petitioner would suffer 'irreparable harm.' " *State v. Garcia*, 350 So. 3d 322, 325 (Fla. 2022).  The irreparable harm question is jurisdictional, and we must address it first.  *See id.*

"Irreparable harm in the criminal context, when the petition is brought by the State, is a unique issue due to the State's limited ability to appeal."  *State v. Milbry*, 219 So. 3d 160, 161 (Fla. 5th DCA 2017) (citing *State v. Pettis*, 520 So. 2d 250, 253 (Fla. 1988)).  Here, the State is correct that it has no independent remedy on appeal.  Its ability to challenge the trial court's ruling other than through an extraordinary writ petition is contingent upon the defendant appealing the judgment. *See State v. Martinez*, 4 So. 3d 712, 713 n.1 (Fla. 4th DCA 2009) ("[U]nless a defendant is convicted and files an appeal, the State cannot obtain review if, during trial, the trial court excludes critical State evidence or gives an incorrect jury instruction." (citing Fla. R. App. P.

3

9.140(c)(1)(K))); *see also Pettis*, 520 So. 2d at 253 n.2 ("The defendant does not suffer the same prejudice [as the State does from erroneous pretrial rulings] because he always has the right of appeal from a conviction in which he can attack any erroneous interlocutory orders."). The State is also correct that under certain circumstances—which may not be known until the penalty phase is complete—the prohibition against double jeopardy prevents a defendant from being eligible for the death penalty if retried or resentenced. *See D'Arcangelo v. State*, 82 So. 3d 1174, 1179-81 (Fla. 2d DCA 2012) (comparing and discussing the holdings of three United States Supreme Court decisions addressing exposure to the death penalty after retrial: *Bullington v. Missouri*, 451 U.S. 430 (1981) (holding that a jury's verdict of life imprisonment barred the possibility of the death penalty at a retrial); *Arizona v. Rumsey*, 467 U.S. 203 (1984) (barring death penalty on retrial when the trial judge in first trial sentenced defendant to life); and *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003) (holding that a trial court's discharge of the jury after the jury failed to reach a unanimous decision as to the sentence and the court's entry of a life sentence did not bar the death penalty on retrial)); *see also Victorino v. State* (*Victorino I*), 241 So. 3d 48, 50 (Fla. 2018) (finding meritless the claim that because jury recommendations for the death penalty were not unanimous, the defendant was "acquitted" of the death penalty such that the prohibition against double jeopardy prevented him from being eligible for a death sentence on retrial).

It is well-settled that certiorari jurisdiction exists to review nonfinal orders that impair the State's ability to prosecute its case. *Pettis*, 520 So. 2d at 253 ("If a nonfinal order does not involve one of the subjects enumerated in Florida Rule of Appellate Procedure 9.140(c)(1), the [S]tate would not be able to correct an erroneous and highly prejudicial ruling.

4

Under such circumstances, the [S]tate could only proceed to trial with its ability to present the case significantly impaired."). The State's case may be impaired by orders impacting the guilt phase of a trial. *See State v. Morgan*, 171 So. 3d 210, 212-13 (Fla. 2d DCA 2015) (granting certiorari relief where "the exclusion from evidence of the audio recordings" would "hamstring, if not destroy, the State's case"); *see generally State v. Storer*, 920 So. 2d 754, 758 (Fla. 2d DCA 2006) ("Since the *Pettis* decision, most opinions granting relief to the State have come in the context of challenges to orders that prevented the State from presenting evidence that was critical to its case."). And pretrial and other nonfinal rulings impacting the sentencing phase of trial may also satisfy the certiorari jurisdictional standard. *See, e.g.*, *Davis*, 147 So. 3d at 9 (granting certiorari petition and quashing pretrial order amending a standard jury instruction regarding sentencing); *State v. Matute-Chirinos*, 732 So. 2d 349, 349 (Fla. 3d DCA 1998) (concluding that it had jurisdiction to review State's certiorari petition seeking review of order declining to give jury instruction on aggravating circumstance and denying petition because trial court did not depart from essential requirements of law); *cf. Brown v. State*, 521 So. 2d 110, 112 (Fla. 1988) ("Although the [S]tate might have sought interlocutory review by writ of certiorari after the ruling and prior to the imposition of the sentence on the grounds that the ruling was a departure from the essential requirements of law, and that imposition of sentence would cause irreparable harm under *Arizona v. Rumsey*, 467 U.S. 203 (1984), and *Bullington v. Missouri*, 451 U.S. 430 (1981), it failed to do so." (citations omitted)); *State v. Moss*, 194 So. 3d 402, 406 (Fla. 3d DCA 2016) (granting the State's petition for a writ of certiorari and reiterating that "the [S]tate has a legitimate interest in having a single jury at the guilt[] and penalty phases, as well as a

legitimate interest in excluding from that jury persons who cannot fairly consider issues regarding a death sentence" and determining that "the State is legally entitled to question the venire members . . . and exclude from the jury those potential jurors whose prejudices and biases would prevent them from considering the death penalty" (citing *Lockhart v. McCree*, 476 U.S. 162, 175-82 (1986))). Moreover, in *Victorino II*, relied upon by the State, the Fifth District concluded that the jurisdictional prongs of the certiorari standard were met where the State challenged a trial court's order refusing to apply the 2023 version of section 921.141. 372 So. 3d at 777.[3]

Having concluded that the jurisdictional prongs of the certiorari standard are met, we next consider whether the trial court departed from the essential requirements of law in granting Lyons' motion and refusing to apply the 2023 version of section 921.141.

At the time the trial court entered its order, the Fifth District had issued its *Victorino II* opinion, addressing the 2023 amendment to section 921.141.[4] The law at the time the trial court rendered its decision was

---

[3] Additionally, in a single sentence opinion, the Florida Supreme Court denied the State's "petition for writ of certiorari challenging the trial court's decision granting a proposed penalty-phase instruction . . . because the State ha[d] not demonstrated that the order depart[ed] from 'the essential requirements of the law.' " *State v. Johnson*, No. SC2019-1994, 2020 WL 7693133, at *1 (Fla. Dec. 28, 2020).

[4] We note, however, that at the time the Tenth Judicial Circuit Court's order was rendered, *Victorino II* had not issued. Thus, in addressing whether the Tenth Judicial Circuit Court had departed from the essential requirements of law, the Sixth District was tasked with examining "the contours of the constitutional prohibition of ex post facto laws." *Lobato*, 2024 WL 2789409, at *2. Because *Victorino II* had issued at the time the trial court in our case rendered its decision and we readily agree with its conclusion, as well as that of *Lobato*, we need not

clear: "[T]he amendment to section 921.141 is a quintessentially procedural change that has no substantive effect. . . . '[I]t does not constitute an ex post facto law.' " *Victorino II*, 372 So. 3d at 778 (quoting *Victorino I*, 241 So. 3d at 50).[5]

"The decisions of the district courts of appeal represent the law of Florida unless and until they are overruled . . . ." *Dep't of Highway Safety & Motor Vehicles v. Chakrin*, 304 So. 3d 822, 829 (Fla. 2d DCA 2020) (quoting *Stanfill v. State*, 384 So. 2d 141, 143 (Fla. 1980)). "The proper hierarchy of decisional holdings would demand that in the event the only case on point on a district level is from a district other than the one in which the trial court is located, the trial court be required to follow that decision." *Id.* at 830 (quoting *Nader v. Dep't of Highway Safety & Motor Vehicles*, 87 So. 3d 712, 724 (Fla. 2012)); *see also Sys. Components Corp. v. Fla. Dep't of Transp.*, 14 So. 3d 967, 973 n.4 (Fla. 2009) ("[A] trial

---

examine the contours of United States and Florida Constitutions' prohibitions against ex post facto laws.

[5] The Florida Supreme Court had also addressed section 921.141 in *Victorino I* and reiterated that "[f]or a criminal law to be ex post facto it must be retrospective, that is, it must apply to events that occurred before its enactment; *and* it must alter the definition of criminal conduct or increase the penalty by which a crime is punishable." 241 So. 3d at 50 (emphasis added) (citing *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)). The court then held that the 2017 version of the statute, requiring unanimity of the jurors to recommend death, "neither alter[ed] the definition of criminal conduct nor increase[d] the penalty by which the crime of first-degree murder is punishable." *Id.* Moreover, decades ago, in reviewing a previous iteration of Florida's death penalty, the United States Supreme Court held that a more substantial change in Florida's death penalty statute "was clearly procedural. The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." *Dobbert v. Florida*, 432 U.S. 282, 293-94 (1977).

7

court may not overrule or recede from the controlling decision of a district court."). That a decision of the district court of appeal is not yet final when a trial court rules on an issue does not affect the binding nature of the appellate decision. *See Kraay v. State*, 148 So. 3d 789, 790 (Fla. 1st DCA 2014) ("The trial court denied the motion, reasoning that it was not bound by [*Weeks v. State*, 39 Fla. L. Weekly D35 (Fla. 1st DCA Dec. 26, 2013),] because the decision was then pending on rehearing and thus was not yet final. . . . The reasoning underlying the trial court's ruling on the motion to dismiss was erroneous because *Weeks* was binding on the trial courts of this district from the date the opinion was issued."); *see also Link v. State*, 273 So. 3d 1115, 1116 (Fla. 3d DCA 2019) ("The trial court is incorrect in its articulated belief that once the Supreme Court 'accepts jurisdiction th[e] [district court's] decision isn't really quite as binding.' " (second alteration in original)); *Rock v. State*, 800 So. 2d 298, 299 (Fla. 3d DCA 2001) ("The State argues that [*State v. Huggins*, 802 So. 2d 276 (Fla. 2001),] should not be relied upon because the decision is not yet final since rehearing is pending before the Florida Supreme Court. Nonetheless, that decision controls until it is altered or overturned."); Philip J. Padovano, *Florida Appellate Practice* § 20.7 (2024 ed.) ("The effective date of an appellate decision is the date appearing on the face of the decision, even though most decisions do not become final until after the time has expired for filing a motion for rehearing.").

The trial court departed from the essential requirements of law by failing to apply binding precedent. *See State v. Jones*, 283 So. 3d 1259, 1266 (Fla. 2d DCA 2019) ("The failure to apply a controlling legal decision is a classic departure from the essential requirements of the law."); *see also Dep't of Highway Safety & Motor Vehicles v. Walsh*, 204 So. 3d 169, 171 (Fla. 1st DCA 2016) (holding that the trial court's failure to follow a

decision from the Second District Court of Appeal "was a profound error, amounting to a clear departure from the essential requirements of law because 'in the absence of interdistrict conflict, district court decisions bind all Florida trial courts' " (quoting *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992))).  The State's petition for a writ of certiorari is granted, and the order precluding application of the 2023 version of section 921.141(2) during Lyons' trial is quashed.

Petition granted; order quashed.

ROTHSTEIN-YOUAKIM and ATKINSON, JJ., Concur.

_____

Opinion subject to revision prior to official publication.